[Civil No. 2135. Filed December 23, 1922.]

[211 Pac. 573.]

GEORGE KINNE, Chairman, FLOYD C. TEMPLE-
TON, Secretary-Treasurer, FRED T. ARMI-
STEAD, W. I. DAVIDSON, FRANK C. EL-
WELL, M. A. ANDERSON and FRED W.
BASSLER, Members of the Board of Directors
of Electrical District Number One, Pinal County,
Arizona; E. F. KELLNER, Jr., Chairman,
ROBERT DENTON and H. H. McDONALD,
Members of the Board of Supervisors of Pinal
County; KATIE E. WEAVER, Treasurer of
Pinal County, and the ELECTRICAL DIS-
TRICT NUMBER ONE, PINAL COUNTY,
ARIZONA, Appellants, v. GEORGE W. BUR-
GESS and FRANK GILBERT, Appellees.

1. STATUTES—STATUTE AUTHORIZING ORGANIZATION OF POWER IRRIGA-
TION DISTRICT MUST PLAINLY EXPRESS ITS PURPOSE.—An act
authorizing the organization of power irrigation districts must
plainly express its purpose.

2. WATERS AND WATERCOURSES—POWER IRRIGATION DISTRICTS PUBLIC
PURPOSE IF LANDS ARID AND SUSCEPTIBLE OF IRRIGATION.—If it
appears that lands sought to be included in power irrigation dis-
tricts are arid and susceptible of irrigation, the principles upon
which gravity of irrigation districts are upheld are applicable
and constitute the power irrigation district a public purpose for
which the imposition of taxes or the issuance of bonds is valid.

3. WATERS AND WATERCOURSES — PROPOSED IRRIGATION BOND ISSUE
AUTHORIZED ONLY BY LAND OWNERS HELD INVALID — "POLITICAL
SUBDIVISION."—A proposed bond issue of a power irrigation dis-
trict, authorized by a vote of the real property owners only,
rather than by the taxpayers in general, as required by Laws of
1915, chapter 49, under which the district was organized, *held*
invalid as a violation of Constitution, article 7, section 13, pro-
viding "bond issues . . . shall be submitted to the vote of prop-
erty taxpayers, who shall . . . be qualified electors of the state,
and of the political subdivision thereof affected by such question,"
such district being clearly a "political subdivision" affected by
the bond issue.

4. WATERS AND WATERCOURSES — POWER IRRIGATION DISTRICT ACT
   HELD INVALID BECAUSE NO HEARING ON BENEFITS, PROVIDED FOR.
   Laws of 1915, chapter 49, as amended by Laws of 1919, chapter
   133, and Laws of 1922, chapter 19, if deemed to authorize the
   organization of power irrigation districts, is defective, in that it
   contains no provision for notice of or a hearing where the ques-
   tion of benefits might be determined; nor is this defect cured
   by the contradictory language of Laws of 1922, chapter 19, pro-
   viding for such a hearing at any time within sixty days after the
   chapter takes effect, and also limiting the time to sixty days after
   the organization of the district.

APPEAL from a judgment of the Superior Court
of the County of Pinal. O. J. Baughn, Judge.
Affirmed.

Mr. A. Van Wagenen and Mr. E. P. Patterson,
County Attorney, for Appellants.

Mr. P. D. Overfield, for Appellees.

ROSS, C. J.—This is an action by George W. Bur-
gess and Frank Gilbert, as taxpayers and owners of
real property in electrical district No. 1, Pinal
county, Arizona, in their own right, and in behalf of
others similarly situated, to enjoin the said electrical
district, its board of directors, the board of super-
visors of Pinal county, and the treasurer thereof,
from issuing and selling $200,000 in bonds of said
electrical district theretofore authorized by a vote
of the real property taxpayers of said district.

Among other things, it is alleged in the complaint
that the proceeds of bonds are proposed to be used
by said electrical district for the purpose of erecting
and maintaining electrical transmission lines and ex-
tensions and the installation of transformer stations
and like equipment intended for the furnishing of
power to users in said electrical district for the
pumping of water for the primary purpose of irriga-
tion. That while the lands are arid and will grow

but little, if any, crops without artificial irrigation, it is alleged that the furnishing of power to obtain water for irrigation is not a public enterprise and is not a function to be constitutionally exercised by any *quasi*-municipal corporation or assessment organization, or district.

It is further alleged that the law (chapter 49, Laws of 1915) under which defendant electrical company was organized is unconstitutional because it provides for no notice to taxpayers and owners of land nor any hearing as to whether their lands would be benefited by reason of their inclusion in said district.

It is further alleged in the complaint that said bond issue was authorized by a vote of the real property taxpayers in said electrical district only; that those residents of said district who paid taxes on personal property only were not allowed to vote on the question.

The complaint charges other fundamental defects in the law authorizing the organization of electrical districts, but these latter we will not notice, as our conclusion on other questions raised, or necessarily involved, disposes of the case.

The answer of defendants admits that only real property taxpayers voted thereon and the purpose of issuing and selling bonds to be as alleged in complaint and the intention to carry out such purpose unless restrained. A hearing was had at which evidence of the organization of the defendant electrical district, the proceedings looking to the voting of bonds, etc., were submitted, as also oral testimony of citizens of said district showing the urgent need and desirability of procuring electrical power for irrigation, also resolutions of the board of directors describing the plant to be installed and giving esti-

24 Ariz.—30

mates of costs, etc. The court, thereafter, entered a decree making the temporary restraining order permanent, such ruling being based upon the unconstitutionality of chapter 49, Laws of 1915, and acts amendatory thereof, on the ground that said laws failed to provide the property owner a hearing as to benefits prior to the establishment of boundaries of district.

The case is presented here on appeal from said judgment, and we are asked by both sides to give it precedence by advancing it upon our calendar and settling the disputed questions involved, so that, if for any reason the proposed issue of bonds be held to be without authority of law, the proponents of such district may take such steps as may seem advisable, under the existing laws of the state, or seek other legislation in aid of their purpose, from the legislature that meets in January, 1923. Although, as usual, when of a friendly nature, involving an unsettled and doubtful question, but desired by both sides to be resolved the same way, the case is not as adequately and fully presented as we would like, we have concluded to yield to the request. We do it the more willingly because we realize that the farmers of Casa Grande Valley must suffer great hardship and loss unless they soon procure irrigation water for their lands—lands naturally very rich and capable, with a sufficient supply of water, of producing good returns to their owners, as well as materially increasing the taxable property of the state, but which without water are of little value to anyone.

The general scheme of chapter 49, Laws of 1915, for the organization of electrical districts, is as follows: When a petition signed by twenty-five freeholders in a proposed electrical district, defining the boundaries thereof, is presented to the board of supervisors, requesting the formation of such district,

it is made the duty of the board, within thirty days, to call an election of the resident freeholders therein, to determine for or against such formation. The qualification of a voter at such election is ownership or equitable interest in real property located in the proposed district, thirty days' residence therein prior to election, besides the general qualification of an elector of the district. If a majority of such voters favor the formation of such district, it is made the duty of the board of supervisors to enter an order in their records declaring its formation, setting forth its boundaries, and thereupon appoint from such electors seven trustees for the district. The board of trustees are given power to acquire for the use and benefit of the persons living within such electrical district, by purchase, rental, generation, manufacture or otherwise, a power plant, and such personal and real property as may be needed or useful in the conduct of the affairs of the district. For the purpose of constructing, maintaining and repairing their plant, to pay interest on bonds, overhead charges, salaries and to provide a redemption fund for the payment of bonds the board of trustees is empowered to fix monthly service charges on the users of electricity and to fix the price thereof, and, if insufficient funds are realized from that source, to certify the deficit to the board of supervisors of the county, who shall thereupon cause to be levied and collected upon the *real estate* within the district a tax sufficient to meet such deficit. If the board of trustees concludes that a larger sum for original construction of plant, than can be raised by taxes and charges as above provided for, is necessary, they may call an election and submit to the *taxpayers* whether the bonds of the district shall be issued and sold for the purpose of making such original construction, or adding equipment, or making repairs,

or extensions. The bonds, if approved at the election, are to be a *lien upon all property* within the district. Provision is made for a redemption fund to take care of bonds from rate charges, and, if insufficient, the money to pay the bonds must be raised by a property tax upon *all the taxable* property in said electrical district.

Chapter 133, Laws of 1919, amended chapter 49, Laws of 1915, but in no material way requiring a statement thereof.

Chapter 49, Laws of 1915, and chapter 133, Laws of 1919, were repealed by chapter 19, Laws of 1922, approved March 29, 1922. This latter act, however, undertakes to validate all electrical districts theretofore organized under existing laws. It also provides that the owners of lands and real estate not susceptible of irrigation and not intended to be farmed may, at any time within sixty days after the taking effect of the act (chapter 19, Laws of 1922), by filing a petition with the board of supervisors setting forth such facts, have a hearing thereon at which hearing the board of supervisors shall determine whether or not the primary object of the formation of said existing district was for the purpose of securing and supplying electrical energy for irrigation purposes and make orders consistent with the provisions of said act. If such application by such land owners is not made within said period of sixty days after the organization of the district in question, then such owners shall be deemed to have waived the right and privilege of having such lands excluded from said existing district.

The language of the act of 1915 nowhere discloses that an electrical district organized thereunder shall have, for its primary purpose, the acquiring of electricity to pump underground water to irrigate arid lands. On the contrary, from a reading of the

act, one would naturally come to the conclusion that it was the intention of the legislature to authorize the residents of rural communities to band themselves together, in the manner provided, for the purpose of procuring electrical energy for general use, rather than for irrigating purposes, since no reference whatever is made in the act to irrigation. If the primary object of the act was to enable owners of arid lands to acquire an electrical plant for the purpose of pumping waters on to their lands for the irrigation thereof, it would seem that such intention would have been expressed either in the title or body of the act, and that object would have been further evidenced by limiting the membership of such irrigation district to owners of arid lands susceptible of irrigation, and placing the burden of taxation solely on such lands and the owners thereof. The act does provide that only real property owners may petition for the formation of the district, but there is no hint therein that their lands, or any lands in the proposed district, shall be arid. If power districts for the purpose of irrigation may be lawfully organized, like gravity irrigation districts, we think that purpose should be plainly expressed in the act authorizing such organization. Before the principles, upon which gravity irrigation districts are upheld, could be applied to a power irrigation district, it would be necessary that the lands proposed to be irrigated be arid lands susceptible of irrigation. It would then subserve a public use and the imposition of taxes, or the issuing of bonds, would not impinge any constitutional right. *Fallbrook Irr. Dist.* v. *Bradley,* 164 U. S. 112, 41 L. Ed. 369, 17 Sup. Ct. Rep. 56 (see, also, Rose's U. S. Notes); *In re Auxiliary Eastern Canal Dist., ante,* p. 163, 207 Pac. 814.

Under the admitted facts in the pleadings, only real property owners, who were qualified electors of

the proposed electrical district, were permitted to vote on the bond issue. Chapter 49, *supra,* provides that the question of issuing bonds of the district shall be submitted to "taxpayers" of the district and that such bonds shall become "a lien upon all property" within the district, and finally, if not paid out of the rental and charges for electricity, they must be paid by a property tax upon "all property" in the district. Section 13, article 7, of the state Constitution, provides:

"Questions upon bond issues or special assessments shall be submitted to the vote of property taxpayers, who shall also in all respects be qualified electors of the state, and of the political subdivision thereof affected by such question."

That electrical district No. 1 is a political subdivision of the state, we think there can be no question, and that it is "affected" by the proposed bond issue, seems equally clear and certain. The evident purpose of the constitutional provision is to give to every property taxpayer, whether his property be personal or real, an opportunity to vote upon bond issues, especially where they are a lien upon his property. Electrical district No. 1 violated this provision of the Constitution when it limited the right to vote to the real property owners therein, since the burden of paying bonds extends to all property in the district. *City of Globe* v. *Willis,* 16 Ariz. 378, 146 Pac. 544.

If chapter 49 be treated, and taken to be, a law authorizing the formation of power irrigation districts analogous to gravity irrigation districts, it is defective, in this, that it contains no provision for notice to the land owners therein, nor for a hearing whereat the question of benefits may be determined. That notice and an opportunity to be heard upon that question are absolutely essential is well settled. *Fallbrook Irr. Dist.* v. *Bradley, supra.* It is funda-

mental that before one's property may be taken, he must have notice and hearing, and, since no opportunity was given the appellees for such hearing at the formation of the defendant electrical district, they were entitled to the injunctive relief sought in this action.

The defect of chapter 49 in failing to provide for the giving of notice and allowing the land owner an opportunity to be heard is not cured by chapter 19, Laws of 1922, as contended by appellants. In one breath it provides for a hearing at any time within sixty days after chapter 19 takes effect, and in the next breath the time is limited to sixty days after the organization of the district. This right to be heard so equivocally given is the right of a land owner in an electrical district formed under the Laws of 1915 and 1919 and not under chapter 19, Laws of 1922. Although the record fails to disclose the date of the formation of electrical district No. 1, it is certain it had come into being many months before chapter 19, Laws of 1922, became effective, making it impossible for the land owner to object to the inclusion of his land within "sixty days after the organization of the district." The right of the land owner to be heard should not be made to rest on language so contradictory as to be unreconcilable.

The judgment of the lower court is affirmed.

McALISTER and FLANIGAN, JJ., concur.