[Civil No. 2276.   Filed March 11, 1924.]

[223 Pac. 1068.]

J. F. BROWN, Appellant, v. ELECTRICAL DISTRICT No. TWO, Pinal County, Arizona, GEORGE KINNE, Chairman; W. I. DAVIDSON, Vice-Chairman; FLOYD C. TEMPLETON, Secretary; FRANK C. ELWELL, Treasurer; and FRED T. ARMISTEAD, M. A. ANDERSON and FRED W. BESSLER, Being the Seven Members, Including Officers, of the Board of Directors of Said Electrical District, Appellees.

1. TAXATION — STATUTE CREATING ELECTRICAL DISTRICTS FOR IRRIGATION NOT UNCONSTITUTIONAL AS AUTHORIZING TAXATION FOR PRIVATE PURPOSE—"PUBLIC PURPOSE."—Laws 1923, chapter 7, providing for the creation of assessment districts to supply electric power for pumping for irrigation purposes, is not unconstitutional as authorizing the levy and collection of taxes and assessments for a private purpose, since the procuring of electric power to make underground water available for irrigation of large areas of arid land that could not otherwise be used is a "public purpose."

2. WATERS AND WATERCOURSES—STATUTE CREATING ELECTRICAL DISTRICTS FOR IRRIGATION NOT UNCONSTITUTIONAL AS NOT CONFINING DIRECTORS' ACTIVITIES TO PUBLIC USE. — Laws 1923, chapter 7, providing for the creation of assessment districts to supply electric power for irrigation purposes, is not unconstitutional, in that the powers of the board of directors are so indefinite that its activities will not be restrained to a public use, since the board of directors, being a creature of the statute, can exercise no powers

1.   See 26 R. C. L. 41, 60.
2.   See 22 R. C. L. 455.

not expressly conferred or necessarily implied, and they are set out with reasonable certainty.

3. CONSTITUTIONAL LAW — STATUTE CREATING ELECTRICAL DISTRICTS FOR IRRIGATION NOT UNCONSTITUTIONAL AS FAILING TO PROVIDE FOR NOTICE AND HEARING TO USERS AFFECTED. — Laws 1923, chapter 7, providing for the creation of assessment districts to supply electric power for irrigation purposes, does not violate the Fourteenth Amendment to the federal Constitution, as ample provision for notice and hearing to the users is provided to afford them an opportunity to show that they will not be benefited by the inclusion of their lands within the district.

4. WATERS AND WATERCOURSES—STATUTE CREATING ELECTRICAL DISTRICTS FOR IRRIGATION ALLOWS BOARD OF SUPERVISORS TO INCLUDE OR EXCLUDE LANDS.—Laws 1923, chapter 7, providing for the creation of assessment districts to supply electric power for irrigation purposes, authorizes the board of supervisors to include or exclude lands upon a proper application and showing.

5. TAXATION — STATUTE CREATING ELECTRICAL DISTRICTS FOR IRRIGATION HELD NOT UNCONSTITUTIONAL IN GIVING DISTRICTS POWER OF TAXATION.—Laws 1923, chapter 7, providing for the creation of assessment districts to supply electric power for irrigation purposes and investing such districts with the power of taxation, is not violative of Constitution, article 9, section 6, giving certain municipal corporations the power to make local improvements by special assessments or by special taxation of the property benefited, since the legislature has all power of legislation not expressly forbidden it by the state Constitution or surrendered to the federal government.

6. TAXATION — STATUTE CREATING ELECTRICAL DISTRICTS FOR IRRIGATION AND REQUIRING ACREAGE ASSESSMENTS HELD NOT VIOLATIVE OF CONSTITUTIONAL UNIFORMITY RULE.—Laws 1923, chapter 7, providing for the creation of assessment districts to supply electric power for irrigation purposes, is not violative of the uniformity provision of Constitution, article 9, section 1, because requiring that taxes or assessments shall be the same per acre throughout the district, such provision relating to revenue required for the general purpose of governing the state and municpality, and having no relation to taxes or assessments levied for local improvements.

7. WATERS AND WATERCOURSES — THAT ELECTRICAL DISTRICTS FOR IRRIGATION ARE DECLARED NOT MUNICIPAL CORPORATIONS IMMATERIAL AS TO POWERS OR ESTABLISHMENT.—That Laws 1923, chapter 7, providing for the creation of assessment districts to supply

---

3.  See 26 R. C. L. 345.
5.  See 26 R. C. L. 31.
6.  See 26 R. C. L. 241, 244; 15 R. C. L. 497.
7.  See 19 R. C. L. 695.

electric power for irrigation purposes by section 20, provides that such districts shall not be construed to be municipal corporations, but that they shall be subject to the constitutional limitation of indebtedness applicable to such corporations, can make no difference upon the powers that such districts shall exercise or the right of the legislature to provide for their establishment.

8. WATERS AND WATERCOURSES—ACTION OF BOARD ON PETITION FOR ELECTRICAL DISTRICT SUFFICIENT. — Where the board of supervisors accepted a petition for the organization of a power district for irrigation purposes, took evidence thereunder, and treated it as in all ways sufficient, there was no basis for the objection that it did not find the petition sufficient, and a finding substantially in the language of Laws 1923, chapter 7, section 3, that the lands were arid lands, and fertile and reclaimable, and that there was a supply of water that could be made available, was sufficient.

9. WATERS AND WATERCOURSES—ELECTRICAL DISTRICT'S CONTRACT TO FURNISH POWER TO STATE AND CITY ON PAYING SHARE OF COST HELD NOT ULTRA VIRES.—Under Laws 1923, chapter 7, providing for the creation of assessment districts to supply electric power for irrigation purposes, a contract with the state and a city whereby they were to be furnished power upon contributing a portion of the cost of the transmission line and other equipment, and the turning over of the physical possession of a transmission line during the life of the contract to an association from which the power was to be obtained, was not *ultra vires*, in view of section 22 of the act, providing that such districts and their boards of directors shall have authority to make reasonable contracts to carry out the plans of the organization.

10. APPEAL AND ERROR—SUPREME COURT CANNOT PASS ON VALIDITY OF BY-LAW OF ELECTRICAL DISTRICT, WHERE NO ACTION TAKEN UNDER SUCH BY-LAW.—The Supreme Court cannot properly pass upon the validity of a by-law of a district created to supply electric power for irrigation purposes, concerning the loaning of the district's funds, where no action has been taken or may ever be taken under such by-law.

APPEAL from a judgment of the Superior Court of the County of Pinal. S. H. Abbey, Judge. Affirmed.

Mr. E. L. Green, County Attorney, for Appellant.

See 4 C. J. 649; 12 C. J. 1261; 37 Cyc. 722, 725, 731, 734, 735; 40 Cyc. 817, 818, 820.

Mr. A. Van Wagenen, Sr., and Mr. A. Van Wagenen, Jr., and Mr. Richard E. Sloan, for Appellees.

ROSS, J.—This action was brought by J. F. Brown against the defendant electrical district and its officers to enjoin the issuance and sale of its bonds in the sum of $304,000, said bonds being a part of a larger issue theretofore voted and authorized by said district. There is no question as to the competency of plaintiff to maintain the suit or of the intention of the defendants to issue and sell bonds in the amount and for the purposes alleged.

The defendant electrical district was organized under chapter 7, Laws of 1923, entitled:

"An act providing for the creation of assessment districts for the purpose of supplying power to users primarily for the purpose of pumping water for irrigation of arid lands. . . . "

Neither the regularity of the organization of the electrical district nor the notice nor the call for election on bond issue nor the vote thereon is seriously questioned. The only novel question presented is as to whether the defendant is a public corporation and the debt it seeks to incur is for a public purpose or a purpose for which taxes or special assessments under the federal and state Constitutions may be lawfully levied and collected.

It is shown by the pleadings and the evidence that the lands within the electrical district are desert and unproductive without irrigation; that underneath the lands proposed to be irrigated is water that may be raised through wells to the surface by hydroelectric power, and applied to such lands; and that such hydroelectric power is available and obtainable for the purpose from the Salt River Valley Water Users' Association, by the construction of a transmission line to connect up with the plant, and transmission lines

of the said Salt River Valley Water Users' Association, and the installation of transformers, laterals, delivery lines, and other auxiliary equipment.

It is shown that the district has a contract arrangement with the state of Arizona whereby said transmission line may be used to transmit to the state prison at Florence 150 kilowatts, to be used therein on condition that the state contribute $50,000 towards the construction of such transmission line, the state to own such proportion of such line as its contribution bears to the whole cost thereof; and with the city of Florence, that if it shall contribute three-fortieths of the construction and installation costs of such transmission line, transformers, etc., it shall be privileged to have transmitted over such line, for the period of twenty years, electrical current for use for municipal and other purposes within the city only; and that there is in contemplation a similar contract with the city of Casa Grande.

It is shown that the transmission line so to be constructed is to be put into the physical control of the Salt River Valley Water Users' Association to the extent necessary to enable it to deliver power direct to the users within the electrical district, also to the city of Florence and the state prison, with the duty of maintaining the same and keeping it in repair, of reading meters and billing the users of power. In short, the plan formulated and proposed and voted upon is that the district build a transmission line from Sacaton, the closest point to Electrical District No. 2 on the present transmission line of the Salt River Valley Water Users' Association, through Florence, where the state prison is located down to Casa Grande Valley and the city of Casa Grande, where said electrical district is situated and connect up with all owners of land in said district who may desire to use hydroelectric power to pump for irrigation.

The purpose of this suit is to prevent defendant electrical district from selling its bonds and carrying out such plan. To begin with it appears that the plan falls well within the terms of chapter 7, and the organization of the defendant corporation being legal, the important question is one of power in the legislature to set up or establish such plan. The lower court resolved the question in favor of defendants, and plaintiff appeals.

It is objected that the law under which the defendants are acting is unconstitutional and void, in that it authorizes the defendant corporation (1) to levy and collect taxes or special assessments for the furnishing of electric power to owners of arid land for the pumping of water for the irrigation of such lands—a private business and not a service the defendant corporation can lawfully operate; (2) in that the powers of the board of directors charged with the management and control of the affairs of defendant corporation are so vague and indefinite that it cannot be said that the activities of the corporation will be restricted to such as the law considers a public use; (3) in that it violates the Fourteenth Amendment to the federal Constitution in failing to provide notice to owners of lands, and affording them an opportunity to show that they will not be benefited by the inclusion of their lands within the district; (4) in that it does not empower the board of supervisors to exclude lands described in the petition and to include lands not therein described; (5) in that it authorizes the defendant district to make local improvements and pay for the same from funds derived by special assessment or special taxation of property benefited—a power that may be exercised only by incorporated cities, towns, and villages as provided in section 6, article 9, of the Constitution of the state; (6) in that the requirement that taxes or assessments shall be the same per acre throughout the district, it violates section 1, article 9, of the Constitution of the state, as to uniformity of

taxation; (7) in that in section 20 of said chapter 7 it is declared, in order to avoid the constitutional limitation of indebtedness of such corporation, that electrical districts are not "municipal corporations"; and (9) assuming that chapter 7 is constitutional, it is objected that the organization of the defendant district is defective because the board of supervisors failed to find the petition for its organization sufficient; and failed to find that the lands were arid and capable of reclamation, and that there was available sufficient underground water supply for the proposed power system; and (10) it is objected that the arrangement with the state by which the state is to contribute to the construction of the transmission line and be permited to have transmitted over it electricity to the state prison, and the like arrangement with the city of Florence, and the contemplated arrangement with the city of Casa Grande, are *ultra vires* and void.

Taking up plaintiff's first contention, the object of the law is obviously in aid of the reclamation of arid lands. The permitting of large numbers of owners of such lands to combine to do what would be impossible to be done by them singly, in gravity systems of irrigation throughout the arid parts of the United States and elsewhere, is common. In desert countries the legislatures provide for the organization of irrigation districts, the purpose of which is to collect and impound the falling rain and waters of running streams, and later utilize them upon the land by means of canals, laterals, and ditches. By this method, and by the co-operation of many, vast and rich areas of land are brought into cultivation. In some sections of the United States large areas of swamp-land have been reclaimed by the process of drainage. Where this method of reclaiming land has been found necessary, the laws have provided for drainage districts. Whichever method has been necessary the courts have uniformly upheld them. In the one case the effort has been to bring the water to the

land, in the other to drain the water from the land, the purpose all the time being to get the land in a condition or state of production so that it might be utilized for the general benefit and welfare of mankind.

The leading case upon the question as to whether the law authorizing the organization of irrigation districts violates any federal or state Constitution is *Fallbrook Irrigation District* v. *Bradley,* 164 U. S. 112, 41 L. Ed. 369, 17 Sup. Ct. Rep. 56 (see, also, Rose's U. S. Notes), and that case, in a very elaborate opinion discussing almost every feature of the law, settled for all time that the development of the arid regions of the west through organized irrigation districts for the distribution of water for irrigation purposes, and providing the expenses therefor by taxation against the lands of the members of such district, was not violative of any constitutional provision. In that case, quoting from the syllabus, it was held:

"The irrigation of really arid lands is a public purpose, and the water thus used is put to a public use; and the statutes providing for such irrigation are valid exercises of legislative power."

In *Re Auxiliary Eastern Canal Irrigation District,* 24 Ariz. 163, 207 Pac. 614, the irrigation law of this state was brought into review and upheld, adopting the reasoning and conclusion of the court in the Fallbrook case and many other cases from the states having irrigation laws.

The principle is the same whether the water is lifted from a natural underground reservoir into and through canals to the land or whether it be taken by direct gravity from an artificial reservoir or from a running stream to the land. Because the method and means employed in the former case to conserve and apply the water differ from the method and means used in the latter case, it should not make the

service or use any the less public or any the less entitled to support by taxation.

In *Kinne* v. *Burgess,* 24 Ariz. 463, 211 Pac. 573, we considered whether Electrical District No. 1 of Pinal county, organized under a different law, but by the same people, and for the same purpose as the present electrical district was a valid organization. We held that the law under which the said Electrical District No. 1 was organized was unconstitutional, principally because it contained no provision for notice or hearing at the time of its organization, or at any other time, to the land owners whose lands were included within the district. We did say, however, this:

"Before the principles, upon which gravity irrigation districts are upheld, could be applied to a power irrigation district, it would be necessary that the lands proposed to be irrigated be arid lands susceptible of irrigation. It would then subserve a public use and the imposition of taxes, or the issuing of bonds, would not impinge any constitutional right."

We did not go into the reasons for so asserting, but we think the reasons are manifold, and apply with equal force and cogency to the present situation as to gravity irrigation districts.

Whatever may be said as to the character of the service in the installation of the electric plant for manufacturing and supplying of electricity for domestic use to the residents of urban communities, whether public or private, we think is immaterial to this case, since clearly here the object and purpose of procuring hydroelectric power is a public purpose, to wit, to make available for irrigation of large areas of arid lands underground water that could not otherwise be used on or applied to the said lands.

As to the second objection, it is sufficient to say that the board of directors is a creature of the statute, and that it can exercise no powers not expressly conferred on it or necessarily implied. These seem to be set out with reasonable certainty.

The third objection to the law is without merit. Ample provision for notice and hearing is provided.

The law itself answers the fourth objection, in that it does authorize the board of supervisors to include or exclude lands upon a proper application and showing.

The fifth objection is that the law investing electrical districts with the power of taxation violates section 6, article 9, of the Constitution, reading as follows:

"Incorporated cities, towns, and villages may be vested by law with power to make local improvements by special assessments, or by special taxation of property benefited. For all corporate purposes, all municipal corporations may be vested with authority to assess and collect taxes."

It is contended that this affirmative investiture of power in certain named municipal corporations to make local improvements by special assessments or by special taxation of property benefited, is equivalent to the denial of such power to all other corporations, including of course hydroelectrical irrigation corporations. This position is not sustainable, for the reason that the legislature has all power of legislation not expressly forbidden it by the state Constitution or not surrendered to the federal government. Such a construction would make it impossible for gravity irrigation districts to function, for they too, in order to accomplish their purpose, must make local improvements in the way of dams, reservoirs, canals, etc., which can only be done by special assessments or special taxation of the property benefited. This question was decided against the plaintiff's contention in *Re Auxiliary Eastern Canal Irrigation District, supra.*

The sixth objection to the law was likewise disposed of in *Re Auxiliary Eastern Canal Irrigation District, supra,* wherein it was stated that the uniformity pro-

vision of the Constitution (section 1, article 9), "relates to the revenue required for the general purpose of government, state and municipal, and has no application to taxes or assessments levied for local improvements."

Section 20 of chapter 7, *supra,* contains a provision to the effect that power districts organized thereunder shall not be construed to be municipal corporations but "that they shall in all respects proceed in the same manner as if they were such corporations coming under the provisions [constitutional] relating to the limit of their indebtedness." It is objected that because a power district does possess some measure of local self-government it is a municipal corporation within the meaning of the Constitution. For the lack of a better descriptive name, irrigation and drainage districts, and such like organizations, are often said to be *quasi*-municipal corporations, but whether they be called one or the other can make no difference upon the powers they may exercise or the right of the legislature to provide for their establishment. It is not what they are called but are that counts.

The next assignment, No. 9, is without any basis of fact. The board of supervisors accepted the petition for the organization of the power district, took evidence thereunder, and treated it in all ways as sufficient. The board specifically found:

"It was established by said evidence that the lands within the proposed district were arid lands, fertile and reclaimable, and that there was a supply of water which can be made efficiently available by the use of power; that on the whole the development reasonably certain to result from the introduction of power is of great interest and benefit to the entire district."

This finding is practically in the language of the statute. Section 3, chapter 7, *supra.*

Lastly it is contended that the contract arrangement with the state and the city of Florence, whereby the

transmission line might carry electric current to the state prison and the city of Florence to be used for their purposes on condition that the state and city contribute stipulated proportions of the costs of construction of transmission line and other equipment, is *ultra vires*. It is obvious that such an arrangement is to the great financial interest of all parties. If the farmers in Electrical District No. 2 can accept the financial assistance of those living along the proposed main line of transmission between the point where it will connect with the Salt River Valley Water Users' Association line at Sacaton and the point where it will terminate in the power district, it will materially reduce the expenses of installation and operation to all concerned. Section 22 of said chapter 7 must have had in view just such an arrangement, for therein it is provided:

" . . . That districts and the boards of directors thereof shall have authority to make reasonable contracts with the state of Arizona, cities and towns, municipal and other corporations and persons for cooperation in carrying out the construction and other plans of the organization as herein provided. In that they shall have the power and authority to make such contracts as shall be reasonable, taking into account the common needs of the district and their partners in the enterprise."

Since the statute authorizes electrical power districts to enter into contracts of the kind, action in pursuance thereof could not well be said to be *ultra vires*.

Under this assignment it is also contended that the turning over to the water users' association the physical possession of transmission line during the life of the contract is likewise *ultra vires*. What we have said concerning the point last above is equally true of this contention.

We are asked to pass upon the validity of a by-law concerning the loaning of the district's funds. We

cannot conceive how such a question could be properly passed upon at this time inasmuch as no action has been taken, or may ever be taken, by the district under such by-law. Until some live controversy subject to judicial cognizance arises we do not feel like expressing any opinion on the validity of the by-law in question.

The judgment of the lower court refusing an injunction, for the reasons herein given, is affirmed.

McALISTER, C. J., and LYMAN, J., concur.