[Civil No. 2323.   Filed July 19, 1924.]

[227 Pac. 989.]

## J. D. BETHUNE, Appellant, v. SALT RIVER VALLEY WATER USERS' ASSOCIATION, a Corporation, Appellee.

1. WATERS AND WATERCOURSES — CORPORATION HELD AUTHORIZED TO CONSTRUCT DAM FOR ELECTRICAL POWER TO BE USED WITH WATER SYSTEM.—Under articles of incorporation, providing that the corporation may create, transmit, use, sell, and dispose of power for the accomplishment of any of the purposes or objects of the association, water users' corporation *held* empowered to construct a dam for developing electrical power to be used in connection with other parts of its water system, and funds necessary for such construction, could be raised by any legitimate means, as by issuing bonds.

2. STATUTES—STATUTE PROVIDING FOR ORGANIZATION AND GOVERNMENT OF IRRIGATION DISTRICTS HELD RESPONSIVE TO GOVERNOR'S CALL.— Laws 1922, chapter 23 (Special Session of Sixth Legislature), providing for organization and government of irrigation districts, is not invalid as not being responsive to Governor's call of legislature "to consider the question of enacting, and to enact new legislation, or the amendment of existing laws, relating to the

general subjects of irrigation, drainage and electrical districts," but is directly responsive to such call.

3. ELECTIONS—LEGISLATURE EMPOWERED TO DETERMINE CHARACTER OF PROPERTY WHICH ELECTOR SHALL POSSESS AS CONDITION OF HIS EXERCISING FRANCHISE.—Const., art. 7, section 13, requiring all questions upon bond issues or special assessments to be submitted to vote of property taxpayers, in effect forbids legislature to pass any law which shall give the franchise, for the mentioned purposes, to any who are not holders of property, but the legislature is at liberty to determine the kind of property which the elector shall possess as a condition of his exercising the franchise in any given instance.

4. ELECTIONS—STATUTE PROVIDING FOR ORGANIZATION OF IRRIGATION DISTRICTS HELD NOT INVALID FOR REQUIRING OWNERSHIP OF REALTY AS CONDITION OF VOTING.—Laws 1922, chapter 23, providing for organization of irrigation districts, is not violative of Const., art. 7, section 13, because making one of the qualifications for voting in the government of the association ownership of real estate.

5. TAXATION — LEGISLATURE MAY GRANT POWER TO LEVY SPECIAL ASSESSMENTS AND TAXES FOR LOCAL IMPROVEMENTS TO BODY OTHER THAN MUNICIPAL CORPORATION.—Laws 1922, chapter 23, providing for organization of irrigation districts, does not, in authorizing levying a tax upon property within the district to provide means for irrigation, conflict with Const., art. 9, section 6, which authorizes municipal corporations to make local improvements and to levy special assessments and taxes for that purpose; the legislature not being impliedly forbidden from granting such power to any other body than municipal corporation, since legislatures possess all legislative power not expressly or by necessary implication forbidden by the Constitution.

6. WATERS AND WATERCOURSES—CONTRACTS OF WATER USERS' ASSOCIATION TO GRANT WATER RIGHTS HELD VALID. — Contracts by water users' association to receive additional subscriptions to stock and to grant water rights *held* not unauthorized, on the ground that the reclamation project had been completed, and that the lands proposed to be taken into the project were not included in the area fixed and limited by the Secretary of the Interior, under Reclamation Act, section 4 (U. S. Comp. Stats., § 4703), where the capacity of the project to supply water for irrigation had been substantially enlarged, and such contracts had been approved by the Secretary of the Interior, under U. S. Comp. Stats., section 4737.

---

3. Power of legislature to define qualifications of voters, see note in 7 Ann. Cas. 665. See, also, 9 R. C. L. 1024, 1040.

4. See 9 R. C. L. 1041.

5. See 26 R. C. L. 31.

7. WATERS AND WATERCOURSES—WATER CORPORATION COULD REOPEN ITS SUBSCRIPTION AND ISSUE BALANCE OF AUTHORIZED STOCK NOT PREVIOUSLY ISSUED.—A water corporation, which closed its subscription, but did not issue all of the shares of its authorized stock, could reopen its subscription for shares if it was able to fulfill its contract with such subscribers and did not impair the rights of previously existing shareholders.

8. WATERS AND WATERCOURSES — CONTRACTS HELD NOT INVALID FOR POSSIBLE PARTIAL FAILURE OF CONSIDERATION.—Contracts by water users' association to grant water rights *held* not invalid that upon a possible contingency the association might be required to supply to persons not shareholders for the use of their lands the stored waters of the project, where such contingency was remote and at most would be a failure in small part only of the consideration.

9. WATERS AND WATERCOURSES—ORGANIZATION OF AGRICULTURAL IMPROVEMENT DISTRICTS NOT INVALID AS INCLUDING LAND NOT IN FEDERAL PROJECT.—Although Laws 1922, chapter 23, under which agricultural districts were organized, provided that the territory to be incorporated within the district must have been recognized as within the exterior boundaries of some federal reclamation project, and susceptible of irrigation by the same general system of irrigation works, such condition was met where, although at one time lands in the districts were not included within the exterior boundaries of a project, they were included in the boundaries as later extended by the water users' association controlling the project, and by the Secretary of the Interior under Fed. Stats. Ann. 1580.

10. WATERS AND WATERCOURSES—CORPORATION COULD GUARANTEE PAYMENT OF BONDS OF AGRICULTURAL IMPROVEMENT DISTRICTS TO WHICH IT WAS ENTITLED BY CONTRACT.—Since a water corporation could issue bonds to pay the entire cost of constructing a dam, it could reach that end by guaranteeing the bonds of agricultural improvement districts to which it had become entitled by contract.

APPEAL from a judgment of the Superior Court of the County of Maricopa. Fred C. Struckmeyer, Judge. Affirmed.

---

8. Partial failure of consideration as affecting validity of contract, see note in 117 Am. St. Rep. 493. See, also, 6 R. C. L. 685.

See 12 C. J. 749; 20 C. J. 75; 36 Cyc. 944; 40 Cyc. 819, 821 (1925 Anno.), 825 (1925 Anno.), 826 (1926 Anno.).

Messrs. Baker & Whitney, for Appellant.

Messrs. Kibbey, Bennett, Gust & Smith, for Appellee.

LYMAN, J.—An injunction to restrain the Salt River Valley Water Users' Association, an Arizona corporation, from proceeding with the preliminary steps toward the construction of a dam across the Salt River is the relief sought for in this action by the appellant, a shareholder in that company. The superior court not only denied the relief and dismissed the complaint, but made specific findings that the action contemplated by the corporation, and sought to be enjoined, was a lawful exercise of its corporate functions, and not in violation of law. That judgment is here for review.

The Salt River Valley Water Users' Association was organized for the purpose of serving to certain lands of the Salt River Valley, in co-operation with government aid, water for irrigation, together with such other activities as might naturally and legitimately be incident to the purposes of irrigation. The development of electrical energy has naturally and inevitably proceeded with the impounding and the distribution of water for irrigation under the Salt River project. The construction of irrigation works for this project was begun and presumably carried to a degree of completion under the direction of the reclamation service of the United States government. A substantial portion of the initial cost of this construction was expended for works and equipment for developing power from waters impounded primarily for the purposes of irrigation. The power plants then built have from time to time since been enlarged and added to both by the reclamation service, and by the Water Users' Association.

As the result of an agreement between the United States of America and the Water Users' Association,

of September 6, 1917, "the care, operation, and maintenance of the irrigation works known as the Salt River project," which had before then been under the supervision and control of the Secretary of the Interior of the United States, became vested in that association, and has since by it been operated, maintained, and with the approval of the Secretary of the Interior enlarged, notably by the construction of the Mormon Flat dam, designed both to conserve water for irrigation and to develop power. The authority of the association, acting with the approval of the Secretary of the Interior, to construct that dam, was questioned in the case of *Orme* v. *Salt River Valley Water Users' Association,* 25 Ariz. 324, 217 Pac. 935. The power of the association to build the Mormon Flat dam and install machinery for the development of electricity from waters impounded by that dam was challenged by the plaintiffs in that case upon the ground that it involved an unlawful exercise of power by the association. The problems involved in that action were all solved favorably to the association.

It is now proposed to build another dam across Salt River, and to install machinery at that point for the purpose of developing electrical power. The authority of the association to do this is questioned in this case.

The actions sought to be restrained in this case are defined in several propositions, which the association proposes to submit to a vote of its shareholders. These propositions are substantially as follows:

Shall the corporate indebtedness be increased to the extent of $4,400,000 for the purpose of constructing a dam to be known as the Horse Mesa development No. 1?

Shall the association guarantee the payment of bonds of the agricultural improvement district No. 2, aggregating the sum of $1,578,000 under the terms of a contract between the association and said improvement district, the proceeds of such bonds to be

used in part for providing irrigation and drainage service to that district, and in part for the construction of said Horse Mesa dam?

Shall the association guarantee the payment of the bonds of Roosevelt agricultural improvement district No. 1, aggregating the sum of $665,000, in accordance with the terms of a contract between the association and that district, the proceeds from the sale of such bonds to be used in part for providing irrigation and drainage service for the lands of the district, and in part for the construction of said Horse Mesa dam?

Shall the bonds of the association in the sum of $2,500,000 be issued and sold for the purpose of raising further funds to be used in the construction of the Horse Mesa dam, and shall their payment be assured by an assessment to be levied upon the lands of the shareholders of the association?

Shall the association be authorized to pledge for the payment of the bonds last mentioned the proceeds of a contract by which the association sells and the Inspiration Consolidated Copper Company buys electrical power?

The judgment is said to be erroneous upon several grounds. Appellant objects that the construction of the Horse Mesa dam, which he asserts is designed solely for the purpose of generating electrical power, is fundamentally wrong and unauthorized by the articles of association, which provide primarily for the carrying on of the business of developing and distributing water for irrigation, and are not sufficiently comprehensive to authorize the construction of dams and equipment to generate electricity, which have no incidental relation to the main object of the corporation.

Admitting, for the purpose of this argument, the fact, which is not wholly true, that this dam will not conserve the supply of water for irrigation, we will consider the question as stated by the appellant.

The physical conditions surrounding and affecting the irrigation works of the association have a direct and controlling bearing upon the question. The Roosevelt reservoir, from which the stored water of the association is derived, is situated fifty miles or more from the point from which its waters are ultimately diverted to the various canals through which they are distributed to the lands of the shareholders. In passing over that distance along the bed of the Salt River, the waters released from the reservoir fall a distance of several hundred feet, and possess great potential value for the development of power. The construction of the Mormon Flat dam above referred to, twenty-eight miles below the reservoir, in part uses the wasting energies of the waters. It is proposed to construct the Horse Mesa dam seventeen miles below the reservoir for the purpose of developing power from the water that now goes to waste. This energy is a natural resource which now is lost.

It is the purpose and policy of the laws to encourage and facilitate the development of such resources. The location at which it is proposed to build this dam is highly favorable for power development, and must ultimately attract private enterprise unless the construction of the proposed works is undertaken by the association. It is obviously to the advantage of the association, which has impounded the waters at great cost, and partly developed the power supplied by such waters, to complete such development, and to retain control of the waters at all points from the outlet at the reservoir to their application directly to the lands of the shareholders of the association. Much of the power thus far developed by the various power plants of the association has been applied directly to the needs of irrigation, and some has been sold to be used for other purposes, and the proceeds applied to lighten the burdens of assessments to meet the cost of original construction. It is proposed to make similar use of

the power resources of the works contemplated by this improvement.

The United States government has granted to the association a preference right to construct works at that place. The articles under which the association is incorporated expressly provide "that it may create, transmit, use, sell and dispose of power for the accomplishment of any of the purposes or objects of the association." The works contemplated by this project, if constructed, would be used like other units of its system, and in connection with such others for the development of electrical power precisely as such other elements of its system already constructed and now in use.

What conclusion should be arrived at were it proposed or contemplated to construct such works wholly apart and independent of other parts of the association's system of irrigation work is not worth while here to consider. This question is entirely different from that. The principle involved in no way differs from the principle involved in the construction of other units of the same system. *Orme* v. *Salt River Valley Water Users' Association,* 25 Ariz. 324, 217 Pac. 935.

It is also objected that the construction of this dam, for the purposes of developing power to be sold, involves the association in an enterprise, not only independent of its main object and the purpose for which it was organized, but introduces into its business a speculative element, and subjects to the hazards of an ordinary business enterprise the funds of the association derived from its stockholders, and not warranted or authorized by the articles of association. This objection deals largely with questions of business expediency, with which the court has nothing to do. The new development might come wholly within the purview of the authority vested in the association by its articles and by law, and yet be improvident. Whether improvident or not, or dictated by good

business judgment, is a responsibility which rests wholly upon the association itself, its shareholders and its officers.

We conclude, therefore, that the construction of these works already approved by the Secretary of the Interior, is not in contravention of any law, and is within the scope of business authorized by the association's articles of incorporation. It must follow, therefore, as a corollary to this proposition, that the funds necessary for carrying on the work may be raised by any legitimate means. If necessary to borrow money for that purpose, the association may do so by taking the requisite steps up to the amount limited by its articles of incorporation, and it may, of course, enlarge the amount of credit already authorized by amending its articles as is proposed to do in this instance, and it may, of course, secure the payment of loans so made by the issuance of bonds directly for that purpose, and by providing for the payment of such bonds, with the accruing interest, by means of assessments upon the property of shareholders. *Orme* v. *Salt River Valley Water Users' Association,* 25 Ariz. 324, 217 Pac. 935.

There remains to be considered the objections to the plan proposed for providing the further funds required to finance the project by means of guaranteeing the payment of the bonds of agricultural improvement district No. 2 and Roosevelt agricultural improvement district No. 1, in the several amounts of $1,578,000 and of $665,000.

The objections raised to this plan are several. It is said: (1) That the law under which these districts were organized is unconstitutional, and that their bonds and other contracts are therefore invalid; (2) that the contracts under which the funds from these bonds are to be made available to the Water Users' Association embody in them covenants on the part of the association which it is not lawfully empowered

to make; (3) that in any event the association, like any other corporation, is without authority to guarantee the indebtedness of any other; and (4) that lands incorporated within these districts are not such as the statute authorizes shall be included.

The statute under which these districts were organized was passed at a special session of the Fifth Legislature, and is found in chapter 23 of the Laws of 1922, and provides for the organization and government of irrigation districts. This law is said to be unconstitutional because the call of the Governor, which defines and limits the power of the legislature to act in the premises, failed to authorize the legislature to pass any such law. Among other things, the Governor directed the legislature—

"to consider the question of enacting, and to enact new legislation, or the amendment of existing laws, relating to the general subjects of irrigation, drainage, and electrical districts."

The act in question is directly responsive to that portion of the call. It is therefore not vulnerable to any such objection.

Still another reason for the unconstitutionality of this act is said to be found in a provision which it contains, making one of the qualifications for voting in the government of the association the ownership of real estate. It is said that the legislature, by this provision of the statute, violated section 13, article 7, of the state Constitution, which is as follows:

"Questions upon bond issues or special assessments shall be submitted to the vote of the property taxpayers, who shall also in all respects be qualified electors of the state and of the political subdivision thereof affected by such question."

Appellee seems to consider the effect of this section of the Constitution to be a grant of authority to every elector, otherwise qualified, who possesses any property whatsoever, to vote at all such elections.

That is not its effect or import. Constitutions measure the powers of the rulers; they do not measure the rights of the government. They withdraw from the legislature, which otherwise possesses plenary powers of legislation, the authority to do certain things, and to enact laws of a certain effect.

"When a state law is attacked upon the ground that it is in violation of the Constitution, it is presumably valid, and this presumption is a conclusive one, unless in the Constitution of the United States, or of the state, we are able to discover that it is prohibited. . . . The lawmaking power of the state, it is said in one case, recognizes no restraints and is bound by none, except such as is imposed by the Constitution." Cooley's Constitutional Limitations, 241.

This constitutional provision in effect forbids the legislature to pass any law which shall give the franchise, for the purposes mentioned in it, to any who are not holders of property. The legislature is left unrestricted in any regulation which it may think wise to make so long as it does not violate that prohibition. It is at liberty to determine the kind and character of property which the elector shall possess as a condition of his exercising the franchise in any given instance.

The law under consideration provides for the organization of districts which shall be authorized to provide means of irrigation of the lands within such district. It deals primarily with real estate, and fittingly delegates the authority to determine the questions arising in the government of such districts to the holders of such lands.

The case cited by appellee of *Kinne* v. *Burgess,* 24 Ariz. 463, 211 Pac. 573, dealt with an entirely different state of facts, and the conclusion there arrived at is not authority in this case. Since deciding *Kinne* v. *Burgess,* this court has found constitutional the statute referred to in *Brown* v. *Electrical District*

*No. 2, ante,* p. 181, 223 Pac. 1068, in which there occurs a provision in all respects similar to the one here under consideration. Cooley's Constitutional Limitations, 241; *People* v. *New York Central Ry. Co.,* 34 Barb. (N. Y.) 123.

This statute is said to be obnoxious to constitutional limitation in still a third respect. In order to carry out the purposes for which the district was organized, that of providing means for the irrigation of its lands, authority is given to levy a tax upon property within the district. This is said to be in conflict with section 6, article 9, of the state Constitution, which invests municipal corporations with the power to make local improvements and to levy special assessments and taxes for that purpose. The inference is drawn that, since municipal corporations are invested with that power, the legislature is therefore forbidden to grant such authority to any other body.

For the reasons pointed out in *Brown* v. *Electrical District No. 2, ante,* p. 181, 223 Pac. 1068, no such inference can be drawn from this section of the Constitution. Legislatures possess all legislative power not expressly or by necessary implication forbidden by some provision of the Constitution. The section of the Constitution above referred to, neither in express language nor by necessary implication imposes the restriction suggested by appellant. The case of *Kinne* v. *Burgess,* to which appellant refers, is not in point.

The remaining objections raised by appellant are based upon provisions of contracts between the Water Users' Association and these agricultural improvement districts and other parties interested in the lands included within such districts, by means of which the proceeds from the sale of the irrigation district bonds, above referred to, are to be made available to the association. The purpose of these

agreements is "to provide and execute a general plan for the unified operation of the irrigation and drainage works situated within the reservoir district," which includes the area defined by the articles of incorporation of the Water Users' Association, for which subscriptions for shares of its stock might be received.

Under these contracts, holders of lands are given the option of subscribing for stock in the Water Users' Association, making water right application to the United States of America, on assuming their *pro rata* part of future obligations, and agreeing to pay all back assessments for capital investments. These contracts have already in large part been executed, and subscriptions for shares in the Water Users' Association have been made and accepted on behalf of a large portion of these lands. The bonds have been issued, and passed through a process of "validation" by the courts in the manner provided for by statute. The benefits conferred upon the lands within these districts by the terms of these contracts, including membership in the association, are to be compensated out of the proceeds of these bonds, the payment of which the association is now asked to guarantee, in order that funds from that source may be speedily available for use in the construction of the Horse Mesa dam.

It is said that the undertaking of the Waters Users' Association to receive additional subscriptions to its shares of stock, and to grant water rights in the Roosevelt reservoir is without authority, and that the lack of such authority invalidates the entire contract, including the bonds issued in execution of the contract. This lack of authority is said to be due, among other things, to the fact that the Salt River reclamation project had long since been completed, and the area to which it might lawfully supply water for irrigation, and for which it might re-

ceive subscriptions for shares of stock, had become fixed and limited by the Secretary of the Interior, acting through what is known as a "survey board." This board made an inquiry into the amount of water then available for irrigation under the project, and determined to what lands it could lawfully be appropriated. Such lands did not include any of the area which is now proposed to be taken into the project.

Undoubtedly the project had reached the completion of one stage of its development at that time; but the physical development of the project has continued since then, and its capacity to supply water for irrigation has been substantially enlarged. Many wells for both drainage and irrigation purposes have been constructed within the project, and the construction of the Mormon Flat dam will undoubtedly make available a large volume of water for irrigation.

The association has also acquired, by its contract with these agricultural districts, the control of such waters as were formerly used in irrigation of those lands. The development of sources of water supply presupposes the necessity of using such waters for some beneficial purpose. Having acquired the waters, the duty follows to apply them to beneficial use.

Section 4 of the original reclamation statute (9 Fed. Stats. Ann. 1367 [U. S. Comp. Stats., § 4703]) provides that the waters developed in any reclamation project shall by proclamation be assigned to a given territory, and the burden of construction assessed against such territory. This proclamation was made by the Secretary of the Interior for the Salt River Valley project in 1917, but an amendment to that act (9 Fed. Stats. Ann. 1380 [U. S. Comp. Stats., § 4737]) provides that the Secretary of the Interior may in his discretion withdraw the public notice heretofore issued under section 4 of the Reclamation Act of June 17, 1902, and he may agree to such modi-

fication of water right application heretofore duly filed, or contracts with water users' associations and others, entered into prior to the passage of this act, as he may deem advisable, or he may consent to the abrogation of such water on applications and contracts, and proceed in all respects as if no such notice had been given.

Acting under the authority of that statute, the Secretary of the Interior has approved the contracts between the Water Users' Association and these two agricultural improvement districts.

Another ground of objection is that the subscriptions for stock in the Water Users' Association have long since been closed. Inasmuch, however, as not all of the shares of stock authorized by its articles have been issued by that corporation, there seems to be no good reason why it could not reopen the subscription for shares, provided it is able to fulfill its contract with such subscribers, and does not impair the rights of those who are already its shareholders.

Another infirmity in these contracts is said by the appellant to lie in the provision, which forms one of the considerations upon which the bonds are to become available to the association, that upon a possible contingency the association may be required to supply to persons who are not shareholders in the association for the use of their lands the stored waters of the project.

It appears from the record that most of the lands included in these districts have already become incorporated within the project by subscription to shares of the association, which have been accepted by it; so that the contingency suggested as a possible infirmity to these bonds is remote, and, if ever realized at all, would apply to but a small portion of the territory, and involve but an immaterial portion of the consideration which forms the basis of these

contracts, both of which have already been in large part executed and performed by the several parties thereto. The appellee contents himself with merely suggesting, without argument or citation of authority, this objection.

At most it would be a failure in small part only of the consideration, not sufficient to vitiate the entire contract, and under the peculiar form of the agreement would, if the question arose, probably result in a controversy between the individual holders of the lands affected and the association. *Tuttle Bros.* v. *City of Cedar Rapids,* 176 Fed. 86, 99 C. C. A. 606.

The statute under which these agricultural improvement districts were organized provides that the territory to be incorporated within the district must have been recognized as within the exterior boundaries of some United States reclamation project, and susceptible of irrigation by the same general system of irrigation works. The appellant says that this condition has not been met in the organization of these districts, because lands included within them have never been recognized as within the exterior boundaries of the Salt River project. It is true, as stated in a former part of this opinion, that at one time lands declared to be then entitled to water in this project did not include any of the lands in question, but all of these lands are within the exterior boundaries of the reservoir district as defined by the articles of incorporation of the Water Users' Association. Acting under the authority both of law and the express provision of these articles, the Secretary of the Interior and the Water Users' Association have taken the necessary steps to extend to these lands the benefits of membership in the Salt River project. We know of no authority by which the limits of the project became so unalterably fixed by the preliminary survey of the lands which might then receive water as to render legally impossible an extension of such boundaries.

Finally it is objected that the Water Users' Association, finding no express authority contained in its articles of association to guarantee the obligations of any other corporation or person, may not guarantee or assume the payment of the bonds of the agricultural improvement districts. Except for the interest which the association already has in these securities, the objection would undoubtedly be well made. There is no doubt but what the association might directly issue its bonds to pay the entire cost of the construction of the Horse Mesa dam. It must logically follow that to reach the same end it has the right to guarantee the bonds of these districts to which it has become entitled by contract.

"A corporation may guarantee the payment of bonds, notes and other evidences of indebtedness owned by it, in order to negotiate or sell the same. Thus a company may guarantee the payment of bonds sold by it after lawfully acquiring such bonds, in the conduct of its business." 2 Fletcher on Corporations, § 928; *Low* v. *California Pac. R. R. Co.*, 52 Cal. 53, 28 Am. Rep. 629.

For the reasons stated in this opinion, the judgment will be affirmed.

McALISTER, C. J., concurs.