[No. 482.   Decided April 15, 1892.]

THE BOARD OF DIRECTORS OF THE MIDDLE KITTITAS IRRIGATION DISTRICT, *Appellant,* v. W. H. PETERSON, *Respondent.*

IRRIGATION DISTRICT—CHARACTER OF CORPORATION.

An irrigation district formed under the provisions of the "act providing for the organization and government of irrigating districts, and the sale of bonds arising therefrom" (Laws, 1889–90, p. 671), is not a municipal corporation within the meaning of art. 8, § 6 of the constitution.

*Appeal from Superior Court, Kittitas County.*

Application by the board of directors to the superior court for a confirmation of the proceedings for the issu-

ance of proposed bonds. The respondent appeared and answered the petition, no other parties appearing. The appellant demurred to the answer, the demurrer was overruled, and from judgment thereon appeal is taken.

*Parsons & Corell*, and *H. J. Snively*, for appellant.
*Ralph Kauffman*, for respondent.

The opinion of the court was delivered by

HOYT, J.—In view of the opinion rendered in the court below and of the concessions and argument of respondent in this court, but one question is left for decision here. Is an irrigation district formed under the provisions of the act entitled "An act providing for the organization and government of irrigating districts, and the sale of bonds arising therefrom," approved March 20, 1890, a municipal corporation within the meaning of § 6 of art. 8 of the constitution of this state?

It is conceded that the scope of said act is such that if it is held that the districts thus created are such municipal corporations, said act must be held to be unconstitutional and void. When any question involving the constitutionality of an act of the legislature is presented to a court for adjudication, it calls for the utmost care and consideration of such court in determining the same, and if this is true in an ordinary case, it is much more so in the one at bar, which presents a question of public policy of the gravest nature; one in fact upon which depends to a great extent the prosperity of a very considerable portion of the inhabitants of the state. If the act in question cannot be sustained by reason of such constitutional provision, it is conceded that no act which would be effective for the purpose can be enacted by the legislature until a change is made in the constitution. In view of these considerations we have given this case such careful consideration as the facilities

at our hands would allow, and will now proceed to examine the same.    But before entering upon such examination it is deemed useful to say a word in regard to the rule of construction which should govern courts in the investigation of questions of this nature.    Our government consists of three co-equal branches or departments, each of equal dignity and entitled to equal consideration, and it must follow that when one of such branches has assumed to act upon a question within its jurisdiction, each of the other departments will give due regard to such action, and will consider it conclusive upon them, unless by reason of some power greater than either of the departments it is made the duty of a particular branch to review the action of another; and even then such action will be assumed to be proper and legal until the contrary is made clearly to appear.    When courts assume to pass upon an act of the legislature and determine whether or not it is constitutional, they do not do so for the purpose of setting up their judgment as against that of the legislature, but from the necessities of the case they are made the final judges of whether or not the legislature has kept within the scope of its authority as defined and laid down by the constitution, which must control as the supreme law of the land.    It follows from these considerations that courts will never hold a law to be void unless in their opinion it clearly violates some express provision of the constitution.    If after the fullest investigation the court is in doubt as to whether or not the law is constitutional, the act will be given the benefit of such doubt and held valid and binding.    The rule as above outlined is not only founded upon sound reason, but has been sustained by a long course of adjudication.

Mr. Cooley, in his work on constitutional limitations, in sustaining the above rule of construction quotes the opinion

of many eminent jurists, all tending to establish the absoluteness of said rule. He says:

"It has been said by an eminent jurist that when courts are called upon to pronounce the invalidity of an act of legislation, passed with all the forms and ceremonies requisite to give it the force of law, they will approach the question with great caution, examine it in every possible aspect and ponder upon it as long as deliberation and patient attention can throw any light upon the subject, and never declare a statute void unless the nullity and invalidity of the act should appear in their judgment beyond reasonable doubt."

BEAN, J., states the rule in the following language:

"Every court approaches with hesitancy the question of declaring a law unconstitutional, and never exerts its power so to do while doubt exists. Every intendment must be given in favor of the law." See *Cook v. Port of Portland,* 20 Or. 580 (27 Pac. Rep. 263).

Quotations similar to these could be given almost without limit, but it is enough to say that courts of last resort have always adhered to the rule substantially as above stated.

With this rule for our guidance, then, we must enter upon the investigation of the question before us, and in view of such rule it will be seen that it is not for us to decide whether or not such districts might not reasonably be held to be municipal corporations within the meaning contended for, but on the contrary it is our duty to see if there is any reasonable classification of such districts which will place them outside of the inhibition of such section of the constitution. That they are not municipal corporations within the strict and better use of said term is conceded by respondent, and is indeed clear from the authorities, but it is claimed that said section six of article eight has by its language made counties and school districts, as well as cities and towns, municipal corporations within the mean-

ing of said section, and that for that reason the words
"other municipal corporations," used therein, must be held
to have a more extended meaning than that usually attach-
ing thereto. This argument seems to us conclusive, and
from it we are forced to the conclusion that every public
corporation formed by the state for the purpose of carry-
ing out any of the duties, which the state owes to any lo-
cality and which by its terms are made alike applicable to
all the inhabitants of the district or locality affected thereby,
must be held to be included within the "other munici-
pal corporations," named in said section. It does not
follow, however, that every corporation, which may be con-
stituted by the state as an agency in the performance of
some public or *quasi*-public duty, comes within said defini-
tion. One of the essentials of a municipal corporation is
that for the purposes for which it is organized it must af-
fect all within its boundaries alike, and this is true even
although such corporation is constituted for a single pur-
pose; for instance, a school district, though organized only
for the purpose of providing means and furnishing facili-
ties for the education of its children, yet affects all the tax-
payers of such district alike. The same may be said of a
county. It has only limited powers, it is true, but those
powers are to be exercised in the interest of all the inhab-
itants of the county alike. Such is not the case with cor-
porations formed under the provisions of the act in question,
for, while it is true that its powers and privileges are
subject to the will of the majority of the electors therein,
yet when it acts thereunder it does not equally affect all of
its inhabitants. The act does not provide that its purposes
shall be carried out by means of a tax on all the property
within the district, but on the contrary expressly limits it
to the real estate situated therein, and which is judged to
be benefited by the improvement contemplated. It will
thus be seen that even if we are to hold that every corpora-

tion which the legislature sees fit to make use of for the purpose of aiding in the government of any district or locality, or providing for the inhabitants thereof, any right or privilege common to them all, were municipal corporations within the inhibition of said constitutional provision, yet it would not follow that corporations of the kind contemplated by this act were also municipal corporations. The powers conferred upon these irrigation districts are not primarily that of government or regulation, or even of taxation, though such are conferred to a limited degree as necessarily incident to the main power conferred. The primary and main power thus conferred is that of local improvement of the real estate therein for the benefit of its owners, and at their expense. In one sense the district thus constituted is not a public corporation at all; its object has no connection with any of the public duties which the state owes to its inhabitants. In a certain sense it is only the purely private interest of the freeholders that is sought to be subserved.

If in the absence of constitutional provisions prohibiting special legislation the legislature saw fit to provide that the farms of three adjoining proprietors should be improved by the erection of a dyke or the excavation of a ditch upon certain conditions therein provided, we do not think it would be claimed that the three farms and their owners were by said act constituted a public corporation, and we are certain that such legislation would not create a municipal corporation, in any sense whatever. The act in question is of substantially the same kind as would be such special act. It is true that it may be extended throughout a large area and affect the rights of a large number of people, but it must be remembered that it does not affect their rights in the way that ordinary municipal corporations do. They pay taxes, it is true, or an assessment in the nature of a tax, but it is not for the benefit of the community at

large within such districts, but for the special benefit of the owners of real estate situated therein, and is proportioned to the benefits which they are to receive from the improvement. In a certain sense no tax in the ordinary use of that word is imposed; each owner of land contributes to a common fund, and receives back from such fund the exact amount of his contribution. Such is not the nature of a tax levied in any of the corporations which have been held te be municipal corporations. In those every taxpayer must pay his taxes according to the value of his property, regardless of the question as to whether or not his property is directly benefited thereby. In the contemplation of law he may be benefited, but such benefit is not the direct and immediate consequence of the payment of the tax as in the case of these districts. In a school district every property owner has to pay a tax regardless of the question whether or not his children are to be benefited by the schools to be maintained therein, and so far as we know this reasoning may be applied to every corporation which has been held to be municipal. It is practically conceded by the respondent that these districts constitute public corporations and not municipal ones, if under our constitution the words public and municipal, as thus applied, have not been made substantially synonymous. Such words are no doubt used at times as expressing substantially the same idea, but it is conceded that in the usual and ordinary sense the word "public" is a broader term than the word "municipal," and includes not only municipal corporations but others of a public character which are not in the ordinary sense municipal. But it is claimed on the part of the respondent, that the provisions of our constitution are such as to abrogate this distinction, and make it the duty of courts in interpreting the same to construe these words as being synonymous. This argument is gathered largely from the wording of said section six of

article eight, which, as we have seen before, classes as municipal corporations school districts and counties as well as cities and towns.   The argument of respondent in this regard being that as school districts and counties belong to the class of public as distinguished from municipal corporations, that the constitution in classing them therewith intended to do away with all distinction between them. In our opinion such a result does not follow, though it must be conceded that the effect thereof has been to enlarge the definition of "municipal" so that corporations will fall within that class which would not otherwise have done so.   But it does not follow that there cannot be corporations which are of a public or *quasi*-public nature which are so different in all their powers, characteristics and objects from either counties or school districts as not to fall within the definition of "other municipal corporations" used in connection therewith.   If the effect of such section was as contended for by the respondent, then the constitution makers did not keep up throughout the entire constitution the idea that such distinction had been abrogated, as they naturally would have done, for in various other sections of the constitution we find the words "public or municipal" used together where the use of both was entirely unnecessary if the distinction between them had been abrogated.   See §§ 13 and 15 of art. 11. Besides, the use of terms in the constitution must be interpreted in the light of legislation existing at the time, and upon an examination of the legislation in force in this state at the date of the adoption of the constitution it will be clearly seen that a well defined distinction as between public and municipal, as applied to corporations, existed.   The constitution clearly recognizes the importance of improvements of the kind sought to be furthered by this legislation, and yet to interpret the section under consideration as contended for by the respond-

ent would take from the legislature the power to deal with the subject in any effective manner. The improvement contemplated in the creation of the districts is a local one in the interest of property benefited, and has nothing whatever to do with the taxing power, and it is possible that this legislation could be sustained upon the ground that the bonds proposed to be issued were not a debt within the meaning of the constitutional provisions relating thereto, but were simply evidences of the fact that a special assessment for the improvement of property benefited had been made and the payment thereof provided for in installments as stated in said bonds. This would, perhaps, be a strained construction of the legislation, but rather than to hold the same unconstitutional it might be our duty to thus construe it. We are, however, better satisfied to hold that these districts, although undoubtedly corporations in a certain sense, and perhaps public corporations, are not municipal corporations within the meaning of said section of the constitution. Such seems to us the reasonable construction of such constitutional provision as applied to the act under consideration, and we should probably sustain the legislation without bringing to its aid the rule of construction above stated. And in the light of said rule our duty to do so is clear.

The judgment must be reversed, and the cause remanded with instructions to the court below to enter a decree approving and confirming the proceedings for the issue of said bonds.

ANDERS, C. J., and STILES and SCOTT, JJ., concur.

DUNBAR, J., not sitting.