[No. 18284.   Department One.   May 12, 1924.]

## In re RIVERSIDE IRRIGATION DISTRICT.[1]

WATERS AND WATER COURSES (88)—IRRIGATION DISTRICTS—NATURE AND POWERS—STATUTES. Under Rem. Comp. Stat., §§ 7417-7504, irrigation districts have no powers apart from the construction of works and the acquisition and furnishing of water to irrigate lands within their territorial limits, and being without power of general taxation apart from the consideration of benefits, they are not public or quasi municipal corporations possessing such powers and functions as to prohibit one district from overlapping the territory of another district.

Appeal from a judgment of the superior court for Okanogan county, Neal, J., entered May 16, 1923, upon findings in favor of the plaintiff, confirming proceedings for the organization of an irrigation district, tried to the court.   Affirmed.

*W. C. Gresham* and *P. D. Smith,* for appellants.

*F. V. Brock* and *Johnson & O'Connor,* for respondent.

*The Attorney General* and *B. B. Adams, Assistant, amici curiae.*

PARKER, J. — This is a special proceeding under §§ 7499-7504, inclusive, of Rem. Comp. Stat. [P. C. § 3269 *et seq.*], commenced in the superior court for Okanogan county by the directors of the Riverside

[1]Reported in 225 Pac. 636.

Irrigation District of that county, seeking a decree confirming the regularity and legality of the organization of the district, and also confirming a proposed issue and sale of bonds of the district. The superior court having acquired jurisdiction of the cause by appropriate statutory notice, certain of the owners of the lands within the district filed their answer resisting confirmation as prayed for by the directors. The cause proceeded to trial upon the merits, which resulted in findings and decree of confirmation as prayed for by the directors, from which the answering property owners have appealed to this court.

The whole contention here made in behalf of appellants, the answering property owners, is in substance that the Riverside Irrigation District was attempted to be formed by the inclusion within its boundaries of lands lying within another previously organized irrigation district, and therefore its organization is wholly illegal and the superior court should have so decreed. The controlling facts touching this contention may be summarized as follows: The Riverside Irrigation District was formed in the summer of 1922 by proceedings conceded to be regular in every respect, apart from its defined territorial limits including lands within another previously organized irrigation district. We shall assume for argument's sake that approximately 45% of all the lands within the defined boundaries of the Riverside Irrigation District lie within the defined boundaries of the previously organized Methow-Okanogan Reclamation District, which is an irrigation district of the same nature, organized and existing under the same statute. Some showing and claim are made that these lands lying within the defined boundaries of both districts have in effect been legally excluded from the Methow-Okanogan district, or at least

that that district has abandoned all effort or intention to render irrigation service to those lands. However, we think the record is not such as to justify us in holding in this cause that those lands are not still legally within the territorial limits of the Methow-Okanogan district.

Counsel for appellants rest their contention practically wholly upon the general proposition, as stated in the text of Dillon on Municipal Corporations (5th ed.), § 354, that:

"There *cannot be,* at the same time, *within the same territory, two distinct municipal corporations,* exercising the *same* powers, jurisdictions, and privileges."

Counsel assume that these irrigation districts are municipal corporations of such nature that it is legally impossible for both to function within territory embraced within the boundaries of both. We may concede this to be a sound general rule applicable to pure municipal corporations whose functions are purely governmental, and whose revenues in aid of such functions are exacted in the form of general taxes upon private properties within the territorial limits of such corporation, without regard to the apportioning of such taxes according to any special benefits flowing to such private properties. These irrigation districts are not such municipal corporations. Indeed, while they are in form public or quasi municipal corporations, in the sense that they have a legal entity and have an organized local government for the purpose of functioning within their very narrow limited powers, which can at most be said to be governmental only in the most limited sense, they are, for the purpose of raising revenue to construct their respective irrigation systems, procure water and furnish the same to lands within their respective boundaries, little else than local

improvement districts whose revenues can be exacted by the burdening of properties within their boundaries only in proportion to the benefits accruing from such works and service to such properties.

Now it requires but a casual reading of these statutes under which these districts exist and function (§§ 7417-7504, inclusive, Rem. Comp. Stat.) [P. C. § 3197 *et seq.*] to see that they have no powers apart from the construction of works and the acquisition and furnishing of water to irrigate lands within their territorial limits, to the end that such lands may become more productive, and to that end may levy assessments upon such lands "in proportion to the benefits accruing to the lands assessed." Suppose certain lands in a district be or become incapable, in whole or in part, of being adequately served with water for their irrigation from the service or system of the district in which they lie. Why may not such lands also be taken within the boundaries of another district and further supplied by such other district in so far as their further irrigation needs may demand? Of course, if there be a statute forbidding such action, that could not legally occur, but we think that there is no such statute in this state, and it may be conceded for present purposes that such lands could not be taken into another district against the will of their owners; but it is not here claimed that these appellants are owners of any such lands, nor that the owners of any such lands have objected to them being taken into the Riverside District. What legal difference can be suggested why one such district may not be in some measure territorially superimposed upon another for such purpose, that could not also be suggested why one ordinary local improvement district could not be territorially superimposed upon another to accomplish further local improvement, when

the revenues burdening the property in irrigation districts and local improvement districts are produced by a tax of the same nature, to wit, special assessments levied against the property benefited in proportion to the benefits flowing to such property from the improvement made or service rendered? The only thing which seems to suggest such an irreconcilable difference is the fact that the improvement and assessment by the irrigation district in the one instance are accomplished through a local organization which is within itself a legal entity independent of a municipality in the form of a city or county, and the fact that the ordinary local improvement is accomplished through the agency of some municipality, such as a city or county. But this, to our minds, only argues that the improvement and service are made and rendered in the one instance by a different agency from that which makes the improvement and renders the service in the other. The authorized improvement and service are, after all, local and in a sense private, in that it is for the benefit of private property which is to be charged therefor in proportion as it is benefited thereby. In *Board of Directors of Middle Kittitas Irr. Dist. v. Peterson*, 4 Wash. 147, 29 Pac. 995, Judge Hoyt very pertinently observed:

"The powers conferred upon these irrigation districts are not primarily that of government or regulation, or even of taxation, though such are conferred to a limited degree as necessarily incident to the main power conferred. The primary and main power thus conferred is that of local improvement of the real estate therein for the benefit of its owners, and at their expense. In one sense the district thus constituted is not a public corporation at all; its object has no connection with any of the public duties which the state owes to its inhabitants. In a certain sense it is only

the purely private interest of the freeholders that is sought to be subserved."

This was said when irrigation districts came nearer possessing power of general taxation than they do now. Since then this court has recognized irrigation districts as municipal corporations, using that term in a limited sense, meaning only that they are legal entities of that nature for certain limited purposes.

As already suggested, we think it needs nothing more than a casual reading of the statutes above referred to to demonstrate that these irrigation districts are limited in their power to the construction of works and the acquisition and furnishing of water for irrigation of lands within their respective territorial limits looking to the increasing of the productiveness of such lands. It is argued, however, in support of the view that these irrigation districts are municipal corporations in a larger sense than we have suggested, that they possess general taxing power; that is, power to levy taxes without regard to proportional benefits flowing to private property within the district, as well as taxation by local special assessments burdening property in proportion to benefits. Are we in error in assuming that this is not so? The nature of the revenue producing power of these irrigation districts, in so far as they have authority to burden private property within their territorial limits, is found in the following provision of § 7436, Rem. Comp. Stat. [P. C. § 3214.]

"Assessments made in order to carry out the purposes of this act shall be made in proportion to the benefits accruing to the lands assessed and equitable credit shall be given to the lands having a partial or full water right: . . ."

By further provisions of that section and some others following, the method of levying such assess-

ments is prescribed, which includes an opportunity on the part of the owners of the property sought to be so assessed to be heard before a final determination and apportionment of the amount of such assessments against the several benefited private properties within the district; all much like the usual levying of special assessments for local improvements. We find nothing in the statute as it now exists or has existed since 1915 conferring upon irrigation districts any general power of taxation, apart from the consideration of benefits.

Our decision in *State ex rel. Clancy v. Columbia Irr. Dist.*, 121 Wash. 79, 208 Pac. 27, is cited as indicating that there does reside in irrigation districts the power of general taxation. That decision dealt with an irrigation district that was formed and with its obligations created prior to 1915. It was there recognized that, as the statute then existed, irrigation districts possessed somewhat larger powers of taxation, but it is there pointed out that "in 1915 the law was amended to provide for assessment according to benefits," and the larger taxation power was recognized as existing in that particular district only for the purpose of paying an indebtedness which was incurred before such change in the law. Our decision in *Northern Pac. R. Co. v. Walla Walla County,* 116 Wash. 684, 200 Pac. 585, is also cited by counsel for appellants as intimating that irrigation districts possess general power of taxation. Such view of the law was conceded by counsel in that case, with reference to certain indebtedness of the district, and we merely assumed that to be correct for the sake of argument; but even there the irrigation district may have possessed the larger power of taxation with reference to certain indebtedness by reason of the time of its organization and the incurring of such debt before 1915. So that case decides nothing of any controlling force in our present inquiry.

Recurring to the quotation from § 7436 above made, it is to be noted that its very language contemplates that land may be within an irrigation district which already has a partial or full water right, and that such land shall be credited accordingly upon the assessments made by the district. This must mean that a given tract of land is not necessarily to be served all by one district or not at all.

These considerations lead us to conclude that these irrigation districts are not public or quasi municipal corporations possessing such powers and functions as to render it legally impossible for them in some measure to function over the same territory, and hence the fact of the overlapping of the territory of these two districts in the manner we have assumed, does not render the Riverside Irrigation District as having been irregularly or illegally organized.

The judgment is therefore affirmed.

MAIN, C. J., HOLCOMB, TOLMAN, and MACKINTOSH, JJ., concur.