[Civil No. 3034. Filed December 26, 1930.]

[294 Pac. 614.]

H. J. RAMIREZ, Appellant, v. ELECTRICAL DISTRICT NUMBER FOUR, PINAL COUNTY, ARIZONA, E. E. ZOOK, EUGENE ANDERSON, A. B. HOUSER, CARL SOMMERFIELD, GIBB MACHAN, JUAN SALAZAR, and E. G. TROUTMAN, Constituting the Board of Directors of Electrical District Number Four, Pinal County, Arizona, and K. J. SEARGENT, Appellees.

Mr. Tom Fulbright, for Appellant.

Messrs. A. Van Wagenen, Sr. & Jr., for Appellees.

ROSS, J.—This is an action by H. J. Ramirez to enjoin Electrical District No. 4 and its board of directors from consummating a sale of $250,000 in improvement bonds of the district to defendant K. G. Seargent. The case was heard upon the pleadings and a stipulation of facts. Judgment was entered for defendants and plaintiff appeals.

The Electrical District was organized November 5, 1929, under the provisions of article 3, chapter 81 (sections 3431–3466), Revised Code of 1928, or what is commonly referred to as the Electrical Irrigation District Act.

A proposed bond issue of $334,000 was regularly voted by the qualified electors of such district on May 26, 1930, and the bonds about to be sold to Seargent are a part thereof. The bonds were advertised as provided by law, and Seargent's bid was the highest and best bid submitted.

The value of the taxable property within the district, according to the last assessment for state and county purposes previous to the twenty-sixth day of May, 1930, was $706,110.

It is contended by plaintiff that the $250,000 of the district's bonds exceeds the indebtedness permitted

under the Constitution and laws of the state. He first claims that the limitation of indebtedness that may be incurred by a county, city, town, school district or "other municipal corporation," under section 8 of article 9 of the Constitution, applies to defendant irrigation district. That section prohibits any of the enumerated corporate entities therein named from contracting an indebtedness to exceed four per centum of its taxable property, except at an election the property taxpayers, who are also qualified electors, give their consent previous to incurring the debt, in which event the indebtedness may be enlarged, by counties and school districts, not exceeding ten per centum of their taxable property, and by cities and towns not exceeding fifteen per centum additional. Does this section's prohibitions have application to an irrigation district organized under article 3, chapter 81, *supra*? If so, it must be because it is one of the "other municipal corporations." This general expression, following an enumeration of corporations classed as "municipal," has been variously construed, depending upon the nature of the question involved. For instance, in *Bugbee* v. *Superior Court*, 34 Ariz. 38, 267 Pac. 420, we held that an electrical district is a municipal corporation within the meaning of section 17, article 2, of the Constitution and entitled to exercise the right of eminent domain, following the Washington court's construction of a like constitutional provision. The considerations leading to such conclusion were that the privilege of eminent domain was not more necessary to a purely municipal corporation than to an irrigation district in securing rights of way for its canals, and that because thereof "municipal," as used in section 17, article 2, was construed to include irrigation districts.

The converse is true with reference to section 8, article 9, *supra,* for if "other municipal corpora-

tions" includes irrigation districts, the latter are limited to a four per centum indebtedness of their taxable property with which to install their irrigation system, since "other municipal corporations" are not authorized, like counties, cities, towns and school districts are, to enlarge their indebtedness. Such a limitation of the indebtedness of irrigation districts would practically nullify the law authorizing their organization and operation. The estimated cost of installing an adequate irrigation system for Electrical District No. 4 is $334,000, or nearly fifty per centum of the value of its taxable property. It is common knowledge that the value of land requiring irrigation consists principally in the water supply. It is unreasonable to suppose or assume that the law would provide for the creation of an agency in the form of an irrigation district to reclaim the arid lands of the state and at the same time hamper such district with restrictions and limitations making it impossible to attain the objects of its creation.

The identical question, under a constitutional provision of the same import as ours, was early before the Supreme Court of the State of Washington in *Board of Directors* v. *Peterson,* 4 Wash. 147, 29 Pac. 995, 996. The court, in a remarkably well stated and reasoned opinion, came to the conclusion that an irrigation district did not fall within the classification of "other municipal corporations." While everything said in that opinion is in point, we quote only a portion thereof to indicate the general reasons for the conclusion reached:

"One of the essentials of a municipal corporation is that for the purposes for which it is organized it must affect all within its boundaries alike, and this is true, even although such corporation is constituted for a single purpose; for instance, a school district, though organized only for the purpose of providing means and furnishing facilities for the education of

its children, yet affects all the taxpayers of such district alike. The same may be said of a county. It has only limited powers, it is true, but those powers are to be exercised in the interest of all the inhabitants of the county alike. Such is not the case with corporations formed under the provisions of the act in question, for, while it is true that its powers and privileges are subject to the will of the majority of the electors therein, yet when it acts thereunder it does not equally affect all of its inhabitants. The act does not provide that its purposes shall be carried out by means of a tax on all the property within the district, but, on the contrary, expressly limits it to the real estate situated therein, and which is judged to be benefited by the improvement contemplated. It will thus be seen that, even if we are to hold that every corporation which the legislature sees fit to make use of for the purpose of aiding in the government of any district or locality, or providing for the inhabitants thereof any right or privilege common to them all, was a 'municipal corporation,' within the inhibition of said constitutional provision, yet it would not follow that corporations of the kind contemplated by this act were also municipal corporations. The powers conferred upon these irrigation districts are not primarily that of government or regulation, or even of taxation, though such are conferred to a limited degree as necessarily incident to the main power conferred. The primary and main power thus conferred is that of local improvement of the real estate therein for the benefit of its owners, and at their expense. In one sense, the district thus constituted is not a public corporation at all; its object has no connection with any of the public duties which the state owes to its inhabitants. In a certain sense, it is only the purely private interest of the freeholders that is sought to be subserved.''

In the recent case of *In re Riverside Irr. Dist.,* 129 Wash. 627, 225 Pac. 636, 637, the character of the question involved made it necessary for the court to determine whether irrigation districts were municipal corporations. The rule announced in the Peterson case was followed, the court saying:

"These irrigation districts are not such municipal corporations. Indeed, while they are in form public or *quasi* municipal corporations, in the sense that they have a legal entity, and have an organized local government for the purpose of functioning within their very narrow limited powers which can at most be said to be governmental only in the most limited sense, they are, for the purpose of raising revenue to construct their respective irrigation systems, procure water, and furnish the same to lands within their respective boundaries, little else than local improvement districts whose revenues can be exacted by the burdening of properties within their boundaries only in proportion to the benefits accruing from such works and service to such properties."

In *Columbia Irr. Dist.* v. *Benton County,* 149 Wash. 234, 270 Pac. 813, 816, the question was whether the property of an irrigation district was exempt from taxation under section 2, article 7, of the Constitution exempting "the property of the United States, and of the state, counties, school districts, and other municipal corporations." The exemption was denied, the court holding that an irrigation district is not a municipal corporation, following the Peterson and Riverside Irrigation District cases, *supra.* We quote the court's conclusion:

"Coming now to the language of the Constitution immediately before us, we are of the opinion that 'other municipal corporations' does not include irrigation districts and thereby exempt land property owned by the district from general taxation. The Constitution provides that the property of the United States, the state, counties, school districts, and other municipal corporations shall be exempt from taxation. Reading the language 'other municipal corporations' in connection with what immediately precedes it, it seems clear that the framers of the Constitution did not intend to include within that exemption irrigation districts which are not municipal corporations, in the strict and proper sense, but are corporations which are organized primarily for the

benefit of the property owners within the district and which have no civic governmental powers or functions. It is unnecessary here to repeat the reasoning in *Board of Directors of Middle Kittitas Irr. Dist.* v. *Peterson, supra,* and *In re Riverside Irrigation Dist., supra."*

We think the above cases from the highest court of the state of Washington, construing a constitutional provision like ours, have taken the only practicable, as well as reasonable, view of the question involved. The classification by our Constitution of different kinds of public corporations as "municipal," as is done in section 8, article 9, thereof, evidently was for the purpose of limiting the indebtedness of those public corporations whose functions more nearly assimilate those of a purely municipal character than those of irrigation districts. The latter are nothing much more than improvement districts entrusted with only sufficient taxing power to compel those directly benefited pecuniarily to contribute to the expenses thereof. They are organized for the specific purpose of providing ways and means of irrigating land within their boundaries and maintaining an irrigation system for that purpose. *Colburn* v. *Wilson,* 23 Idaho 337, 130 Pac. 381. "Their function," as we said in *Day* v. *Buckeye Water etc. Dist.,* 28 Ariz. 466, 237 Pac. 636, 638, "is purely business and economic, and not political and governmental. They are formed in each case by the direct act of those whose business and property will be affected, and for the express purpose of engaging in some form of business, and not of government. The power of incurring obligations of any nature is ultimately left in the hands of those whose property is affected thereby."

Next, plaintiff takes the position that the legislature in section 3450 of article 3, chapter 81, *supra,* prohibits an irrigation district from contracting an

indebtedness in excess of what is allowed to municipal corporations by section 8 of article 9 of the Constitution. The pertinent portion of that section reads as follows:

"Nothing in this article contained shall be construed as enacting or declaring power [irrigation] districts organized hereunder to be municipal corporations within the meaning of said constitutional provision but it is enacted that they shall in all respects proceed in the same manner as if they were such corporations coming under the provisions relating to the limit of their indebtedness."

It must be admitted that this provision of the statute lacks perspicacity. At first blush it appears to limit the indebtedness that an irrigation district may contract, but this, we think, is negatived by the provision therein taking such districts out of the category of those incorporations designated as "municipal." While the indebtedness of such corporations is limited to a percentage of their taxable property, the limitation does not apply to corporations not of that class. Corporations falling within the constitutional prohibition (section 8, art. 9, *supra*) must, before incurring such excess, always proceed to obtain from the property taxpayers, who are also qualified electors, their consent thereto. We construe section 3450, *supra,* as meaning that irrigation districts, before they may incur any indebtedness other than that incident to their organization and the fixed and current expenses after organization, must submit the same to the property taxpayers of the district qualified to vote, in the same manner as counties, cities, towns, school districts and other municipal corporations are required to do under said provision of the Constitution. In other words, they must, before incurring a bonded indebtedness to cover the estimated cost of the irrigation system planned by the board of directors as provided in

section 3447, Revised Code of 1928, obtain the consent thereto of the property taxpayers of the district, who are also qualified electors thereof. Section 3450 provides a procedure to be followed by irrigation districts before incurring bonded indebtedness, but does not limit the indebtedness to a percentage of the district's taxable property.

The two questions that we have discussed are the only ones that have been presented for our determination, and we are of the opinion that they were correctly decided by the trial court.

The judgment is affirmed.

LOCKWOOD, C. J., and McALISTER, J., concur.