[Civil No. 3588. Filed January 17, 1935.]

[40 Pac. (2d) 94.]

# MARICOPA COUNTY MUNICIPAL WATER CON-SERVATION DISTRICT NUMBER ONE, Plaintiff, v. ARTHUR T. LA PRADE, as Attorney General of the State of Arizona, Defendant.

62

Messrs. Elliott & Lewis and Mr. H. A. Elliott, for Plaintiff.

Mr. Arthur T. La Prade, Attorney General, and Mr. Charles L. Strouss, Assistant Attorney General, for Defendant.

LOCKWOOD, C. J.—This is an original proceeding by Maricopa County Municipal Water Conserva-

tion District No. 1, an irrigation district organized under chapter 149, Session Laws of Arizona 1921, hereinafter called the district, asking for a writ of *mandamus* against Arthur T. La Prade, as Attorney General of the state of Arizona, hereinafter called defendant, directing him to certify certain contracts in the manner set forth in chapter 6 of the Third Special Session of the Eleventh Legislature, hereinafter called the act.

Defendant has demurred generally to the complaint on the ground that it does not state a cause of action, and specially that it appears the proceeding is an attempt to control his discretionary action, and that the act is unconstitutional for some thirteen reasons, and has then answered, admitting all of the allegations of fact and conclusions of law of the complaint; that the proceedings mentioned therein were had in the form and manner prescribed by the act; and that the contracts set forth therein are, as a matter of law, in conformity with the Constitution and laws of Arizona.

The complaint is a mere trifle of some 350 typewritten pages, and we shall therefore summarize it only in a very sketchy narrative form at first, reserving for a later portion of this opinion a more extended reference to such parts of the complaint as may from time to time be necessary.

The district embraces some 39,000 acres of land west of Phoenix, susceptible of irrigation from the Agua Fria River, and in 1925–1927 it erected a large dam on said river to store water for irrigating such lands, and built a distributing system appurtenant thereto. To secure funds for this work it issued and sold two series of bonds; the first for $3,325,000, and the second for $1,175,000, which bonds are all now outstanding obligations of the district. Thereafter, for various reasons, the dam and distribuing system above described have become greatly impaired and

it will require the expenditure of a large sum of money to put them in proper shape to furnish water for the district's lands. The district has been in default of the interest charges on its bonds since January 1, 1930, and its situation is such that it is impossible to borrow money in the ordinary manner to rehabilitate its plant, and without such rehabilitation its financial situation is bound to grow continuously worse. For this reason it has been negotiating with the Reconstruction Finance Corporation, commonly and hereinafter called the RFC, to secure the $1,350,-000 which it believes necessary to rehabilitate its affairs. As a result of these negotiations a plan was worked out under which the RFC has signified its willingness to loan the money. This plan may be briefly summarized as follows: (a) The present bondholders of the first and second series of bonds of the district are to deposit their bonds with a certain group of men, hereinafter called the committee; (b) a new private corporation, the Maricopa Reservoir & Power Company, hereinafter called the company, will issue its bonds in the sum of $4,500,000 and of two classes, to be exchanged with the present bondholders for the bonds so deposited with the committee; (c) the RFC will select from the bonds of the district deposited as above $1,350,000 face value, and pay the par value therefor, which sum is to be used for the rehabilitation of the district works as aforesaid and the remaining bonds to be canceled; (d) plaintiff will cause 15,000 acres of the land in its boundaries to be transferred to the company; will turn over to it the operation of its storage and distributing system for the term of the contract and will levy taxes and assessments sufficient to pay the bonds in the hands of the RFC, principal and interest as they become due, and certain specified sums annually to the company for its services; (e) the company will operate the storage

and distribution plant of the district and spend a fixed amount for the development of a new water supply. The contracts providing for these things were approved by a majority of the real property taxpayers of the district, who were also qualified electors of the state and of the district, and were then submitted to the Attorney General for his approval and certification as provided in the act. He refused either to approve or disapprove, on the ground that the act was unconstitutional for many reasons, stating them, and thereafter this suit was filed and the alternative writ issued.

It is obvious from the entire record that this is, in effect, a proceeding of a character like those referred to by us in *Re Verde River Irr. Dist.*, 37 Ariz. 580, 296 Pac. 804, *Day* v. *Buckeye Water etc. Dist.*, 28 Ariz. 466, 237 Pac. 636, and *Allison* v. *City of Phoenix*, 44 Ariz. 66, 33 Pac. (2d) 927, 93 A. L. R. 354, and for the reasons set forth in those cases our judgment herein is limited to the precise questions discussed and decided by us and none other, reserving as open any other questions which might have been, but have not been, so expressly decided.

The first question is whether *mandamus* is an appropriate proceeding to determine the matters involved herein. Section 11 of the act, by virtue of which the district claims it is the duty of defendant to certify the contracts hereinbefore referred to, reads as follows:

"Sec. 11. *Attorney General to pass upon validity.* That notwithstanding the provisions of any general, special or local law, any district may submit to the Attorney General of the State of Arizona, any such contract or agreement or any bonds to be issued under any such contract or agreement entered into pursuant to the provisions of this Act after such bonds shall have been prepared, signed and sealed. Upon any such submission to the Attorney General,

it shall be the mandatory duty of the Attorney General to examine into and pass upon the validity of such contract or agreement or of any such bonds and the regularity of all proceedings in connection with the execution and issuance thereof. If such contract, agreement and bonds have been executed and issued in conformity with the Constitution and Laws of the State of Arizona and are binding, legal and valid obligations of such district and enforceable according to the terms thereof, the Attorney General shall certify in substance upon the back of each of such bonds and on the back of any such contract or agreement or of a certified copy thereof so submitted to him, that it is issued or executed pursuant to the Constitution and the Laws of the State of Arizona. Such certificate shall be conclusive evidence of the authority of the district to enter into such contract or agreement and/or to issue such bonds and of the validity thereof.''

It is defendant's contention that this section confers a discretion on him to determine whether or not the act is constitutional, and under such circumstances, having exercised his discretion in holding that it is not, *mandamus* does not lie to compel him to act further. It is the position of the district that if the act is, as a matter of law, constitutional, he has no discretion as to whether or not he shall proceed to perform the duty imposed on him by section 11, *supra*.

■■ The general rule of law is that where the performance of an act is a matter of discretion on the part of a public officer, *mandamus* does not lie to compel him to do the act. *Prina* v. *Board of Supervisors,* 16 Ariz. 252, 143 Pac. 567; 38 C. J., p. 659, and notes. But where as a matter of law he is bound to act in some manner, even though he have discretion as to *how* he shall act, he can be compelled to act. *United States ex rel. Ness* v. *Fisher,* 223 U. S. 683, 32 Sup. Ct. 356, 56 L. Ed. 610; *State* v. *Hinkle,*

120 Wash. 85, 206 Pac. 942. · And if it appear in the proceeding that there is only one legal way he can act on an admitted state of facts, it would seem that he no longer has any discretion, that his duty, although discretionary if the facts are in dispute, becomes ministerial only, and that logically there is no reason why *mandamus* should not lie to compel him not only to act, but to act in the only manner which the law permits.

The constitutionality of an act of the legislature of Arizona and its legal effect are of course questions of law, the final determination of which is for this court, and such determination is not subject to review, except so far as federal matters are concerned.

■ The complaint herein alleges, in substance, that the contracts in question are executed in all respects in conformity to the Constitution and laws of Arizona, and particularly in accordance with the act, and it is alleged that defendant does not deny this; his refusal to certify being based solely on the claim that the act, for certain specified reasons, is unconstitutional. The answer of defendant admits this. If, therefore, the act is constitutional, on the pleadings as they are before us it is defendant's duty to certify the contracts. It has been held in other states, under analogous circumstances, that *mandamus* does lie, and that the issue is the legal meaning and constitutionality of the statute imposing the duty, and that the court in such a proceeding, no issue of fact being raised, will determine the whole matter. *Tarrant County Water Control & Imp. Dist. No. 1* v. *Pollard,* 118 Tex. 138, 12 S. W. (2d) 137; *Board of Commrs.* v. *State,* 31 Okl. 196, 120 Pac. 913; *Eberhardt Const. Co.* v. *Board of Commrs.,* 100 Kan. 394, 164 Pac. 281; *Giles* v. *City of Houston,* (Tex. Civ. App.) 59 S. W. (2d) 208; *State ex rel. Griffith* v. *Board of Commrs.,* 113 Kan. 203, 213 Pac. 1062.

. We have held the same, in substance, in *State* v. *Cox,* 43 Ariz. 174, 30 Pac. (2d) 825.

We hold therefore, that in this proceeding we may and should determine the constitutionality of the act and, if it be constitutional, command defendant to perform his manifest duty thereunder.

The act is lengthy, and while it is our duty to consider carefully each and every portion thereof involved in the issues raised, yet, since our determinations on most of these issues will furnish no precedents of value for future cases (for, in matters of statutory construction, everything depends on the wording of the particular statute), we think it unnecessary to set the act forth in full in this opinion, quoting from it only as may be necessary. The constitutional objections raised by defendant in his special demurrer are as follows:

"(a) The District Enabling Act of 1934, enacted by the Eleventh Legislature, in Third Special Session, is not related to the subjects specified within the call for such special session in contravention to Section 3, Part 2, Article IV of the Constitution of Arizona.

"(b) The District Enabling Act of 1934 contravenes Section 13, Part 2, Article IV of the Constitution of Arizona in that (1) it embraces more than one subject, and (2d) the title of the Act does not express the subject of the Act, and the body of the Act is not germane to the subject, contrary to the provisions of Section 13, Part 2, Article IV of the Constitution of Arizona.

"(c) The District Enabling Act of 1934 provides improper delegations of legislative power contrary to . Section 1, Part 1, Article IV of the Constitution of Arizona.

"(d) The provisions of Section 6 of the District Enabling Act of 1934, granting power to issue bonds, and the provisions of Section 3 of the Act, granting power to levy and collect taxes (such powers to be exercised by districts organized under existing laws), authorize the creation of an indebtedness by such dis-

tricts in an amount in excess of and contrary to the amount as limited or provided in Section 8 of Article IX of the Constitution of Arizona.

"(e) The provisions of Section 4 of the District Enabling Act of 1934 authorize the grant, extension or renewal of municipal franchises without a vote of the qualified electors of the district.

"(f) The District Enabling Act of 1934 violates the provisions of Section 6, Article XIII of the Constitution of Arizona, in that it authorizes the grant of exclusive franchises, it authorizes the surrender by the District of its power to regulate charges for district services, and it authorizes the grant, extension or renewal of franchises, or other use of the ways and properties of the district, so as to divest the district of its control and regulation of such use and enjoyment.

"(g) The provisions of Section 4 of the District Enabling Act of 1934 grant power to create a trust or monopoly in violation of the provisions of Section 15, Article XIV of the Constitution of Arizona.

"(h) Section 5 of the District Enabling Act of 1934 authorizes the creation of a voting trust contrary to public policy.

"(i) Section 5 of the District Enabling Act of 1934 authorizes districts—municipal corporations—to become shareholders in a corporation contrary to Section 7, Article IX of the Constitution of Arizona.

"(j) The District Enabling Act of 1934 violates the provisions of Section 1, Article IX of the Constitution of Arizona, in that it authorizes the surrender, suspension, or contracting away by the District of its power of taxation, and the taxes authorized thereby to be levied are not uniform.

"(k) That the District Enabling Act of 1934 authorizes the appropriation of private property to a private use without the consent of the owner, in violation of the provisions of Section 17, Article I of the Constitution of Arizona.

"(l) The District Enabling Act of 1934 violates the provisions of the Fourteenth Amendment to the Constitution of the United States in that it authorizes the appropriation of property of nonresidents without due process of law.

"(m) The District Enabling Act of 1934 violates the provisions of the Fourteenth Amendment to the Constitution of the United States, by authorizing the appropriation of property without due process of law, by reason of the judicial proceeding provided in Section 10 of the Act, in that such proceeding is constituted a proceeding *in rem;* and for the further reason that an unreasonably insufficient and inadequate notice to parties interested is provided, and that such proceeding is authorized to be instituted prior to the existence of any real controversy, and that this section of the Act attempts to confer upon the Court jurisdiction to determine a matter as to which no present controversy exists."

The first objection is that the act does not come within the provisions of the call for the special session of the legislature at which it was passed, made by the Governor under section 3, part 2, article 4, of the Constitution. That portion of the call upon which the act must depend for its validity reads as follows:

"To enable irrigation districts, drainage districts, flood control districts, agricultural improvement districts, electrical districts and power districts to borrow money or receive grants from any Federal agency for any district purpose."

The legislation, in regard to the mentioned districts, which may be passed under the call, is such as will enable them to "borrow money or receive grants" from the federal government. The title of the act does not limit contracts with that government to those in aid of loans or grants, but permits the unlimited right of contract of any nature. This goes far beyond the terms of the call, and if the body of the act went as far as the title it would undoubtedly be beyond the call, and thus unconstitutional. But on reference to section 2 thereof, which sets up the kind of contracts authorized by it, we find that it limits the contracts authorized by the act to the securing of

"loans, grants or advances" from the government, and all the remaining sections of the act refer back to "such contracts" and are merely auxiliary thereto. It is a case of the body of the act being narrower than the title. We think that in such a case it is the body, and not the title, which determines whether the act is within the call for, after all, the body is the true legislation; the title and enacting clause being merely necessary accessories thereto. The act is within the call of the Governor.

▮ The next objection is that the act embraces more than one subject and that its title does not express the subject of the act and its body is not germane to the title, thus violating section 13 of part 2, article 4, of the Constitution. The title to the act reads as follows:

"An Act authorizing irrigation districts, drainage districts, flood control districts, agricultural improvement districts, electrical districts, power districts and other districts as defined herein, to enter into contracts or agreements with the federal government or any officer, agency, corporation or instrumentality thereof; providing for the validation of such contracts heretofore entered into by any such districts and of all proceedings taken in connection therewith; providing for the approval of such contracts or agreements and the issuance of any bonds thereunder by the vote of real property taxpayers, and the validation thereof by actions *in rem;* further providing for the approval of the Attorney General of such contracts and of bonds issued thereunder; and declaring an emergency."

It will be seen on an examination of the title that there is one broad general purpose set forth, to wit, the bestowal on various districts of the class defined by the act of the power to make contracts, unlimited in character, with the federal government. In aid of such power, these districts may have any such contracts validated by vote of their real property tax-

payers and by an action *in rem,* and may require the approval of the Attorney General to such contracts, and bonds issued thereunder. We have examined and compared the different sections of the act with the title and are of the opinion that each and all fall within one or more of the provisions of the title. It is true, as we have just said, that the title is broader than the body of the act. This, however, does not violate the constitutional prohibition. The mischief against which the latter was directed was the making of the title too narrow and not too broad. *Ash* v. *Thorp,* 65 Kan. 60, 68 Pac. 1067; *State* v. *Standard Oil Co.,* 111 Minn. 85, 126 N. W. 527; 59 C. J., p. 809, and notes. We are further of the opinion that the various subsidiary or auxiliary purposes of the title, and therefore of the different sections of the act, are germane to the one general purpose, to wit, the making of contracts of loan or grant between the federal government and the various districts, and that the act therefore does not violate section 13, part 2, article 4, of the Constitution.

■■ The next objection is that the act contains a number of instances of illegally delegated authority. It is universally held that the legislature cannot delegate its power of general legislation to any individual, or group of individuals, however organized. *Thalheimer* v. *Board of Supervisors,* 11 Ariz. 430, 94 Pac. 1129; *Field* v. *Clark,* 143 U. S. 649, 12 Sup. Ct. 495, 36 L. Ed. 294. But it is also held that legislative power of a purely local nature may be delegated to political subdivisions created for the purpose of local self-government. *Territory* v. *Town of Jerome,* 7 Ariz. 320, 64 Pac. 417; *Butte City Water Co.* v. *Baker,* 196 U. S. 119, 25 Sup. Ct. 211, 49 L. Ed. 409. The various instances of delegated powers, claimed by defendant to be found in sections 3, 4, 5 and 8 of the act, unquestionably refer to matters af-

fecting the district alone, and if it is a political subdivision of the state the objection is not well founded. What, then, is the nature of an irrigation district under our laws? That it is a public, instead of a private, corporation established by the legislature for a public use cannot be questioned, for otherwise it could not exercise the right of taxation, and compel unwilling landholders within its limits to subject their lands to such taxation. *Fallbrook Irr. Dist.* v. *Bradley,* 164 U. S. 112, 17 Sup. Ct. 56, 41 L. Ed. 369; *In re Madera Irr. Dist.,* 92 Cal. 296, 28 Pac. 272, 675, 27 Am. St. Rep. 106, 14 L. R. A. 755.

But is it also a political subdivision of the state? The decisions on this point, even in the same jurisdictions, are in hopeless conflict. Compare the following:

*People* v. *Cardiff Irr. Dist.,* 51 Cal. App. 307, 197 Pac. 384, 387, "It is no longer open to doubt that the legal status of an irrigation district is that of a municipal corporation," with *Wood* v. *Imperial Irr. Dist.,* 216 Cal. 748, 17 Pac. (2d) 128, 130 " . . . We think that the great weight of authority is to the effect that an irrigation district is not strictly a municipal corporation."

*Indian Cove Irr. Dist.* v. *Prideaux,* 25 Idaho 112, 136 Pac. 618, 621, Ann. Cas. 1916A 1218, "It is settled law that irrigation districts are public corporations although not strictly municipal," with *Gem Irr. Dist.* v. *Van Deusen,* 31 Idaho 779, 176 Pac. 887, "An irrigation district is a municipal corporation within the meaning of the foregoing constitutional provision [giving municipal corporations power to collect taxes]."

*Kinne* v. *Burgess,* 24 Ariz. 463, 211 Pac. 573, 575 (after holding that the same principles apply to gravity irrigation districts and electrical power irrigation districts), "That electrical district No. 1 is a political

subdivision of the state, we think there can be no question," and *Day* v. *Buckeye Water etc. Dist.*, 28 Ariz. 466, 237 Pac. 636, "It is true that in *Kinne* v. *Burgess,* 24 Ariz. 463, 211 Pac. 573, we held an electrical district to be a political subdivision of the state within section 13, article 7, of the Constitution, and it is doubtless true that an irrigation district is also such a subdivision within the same section, and for the same reasons," with *Ramirez* v. *Electrical Dist. No. 4,* 37 Ariz. 360, 294 Pac. 614, 616, "The latter [irrigation districts] are nothing much more than improvement districts intrusted with only sufficient taxing power to compel those directly benefited pecuniarily to contribute to the expenses thereof."

We think the true rule and the reasons therefor are well set forth in *Day* v. *Buckeye Water etc. Dist., supra,* as follows:

"Counties, cities, towns, and municipalities all belong to a class of subdivisions of the state primarily established for what are commonly called political and governmental, as aside from business purposes. Any exercise of the latter function is merely incidental to their existence and in no way necessary for it. And in the past, and particularly when it took one of the forms prohibited by the section in question, such exercise has generally resulted so disastrously to the public that the wisdom and purpose of the constitutional provision as applied to such subdivisions is plain. On the other hand, irrigation districts and similar public corporations, while in some senses subdivisions of the state, are in a very different class. Their function is purely business and economic, and not political and governmental. They are formed in each case by the direct act of those whose business and property will be affected, and for the express purpose of engaging in some form of business, and not of government. The power of incurring obligations of any nature is ultimately left in the hands of those whose property is affected thereby."

Districts of the kind involved in this proceeding therefore belong to that class of organizations, once rare but becoming more and more common, established for the pecuniary profit of the inhabitants of a certain territorial subdivision of the state, but having no political or governmental purposes or functions. In some respects these organizations are municipal in their nature, for they exercise the taxing power, the greatest attribute of sovereignty, and can compel the inclusion of unwilling landholders within their bounds. In other ways they resemble private corporations, for they are liable for the torts of their servants in the same manner and to the same extent, and indeed generally have the same rights and responsibilities. Probably the best definition we can give then is to say that they are corporations having a public purpose, which may be vested with so much of the attributes of sovereignty as are necessary to carry out that purpose, and which are subject only to such constitutional limitations and responsibilities as are appropriate thereto.

We think, therefore, that even though there be a delegation of legislative power to the district, if such delegation be only of such nature as is reasonably necessary to carry out the purposes of the district authorized by law, and if it is not in conflict with any specific constitutional limitation applying to districts of this kind, the delegation is valid. Tested by this rule, we think that even if any of the provisions of the act mentioned by defendant do actually delegate legislative authority, the delegation is of such nature as could properly be given to the district.

██ We consider next whether the act authorizes the district to create an indebtedness greater than that authorized by section 8 of article 9 of the Constitution. This is answered by us in *Ramirez* v. *Electrical District No. 4, supra,* where we hold that irri-

gation districts do not fall within the constitutional provisions referred to. The same is true as to the objections that the act granted an extension or renewal of a franchise without a vote of the qualified electors of the district, and authorizes the grant of exclusive franchises and the surrender by the district of its power to regulate charges for district services. These objections are based on the provisions of sections 4 and 6 of article 13 of the Constitution. But the article referred to shows on its face that it concerns itself only with municipal corporations of the type of cities and towns, political subdivisions of the state in the full sense of the term, and not with organizations of the type of the district.

 The next objection is that the act grants power to create a trust or monopoly, in violation of section 15, article 14, of the Constitution. This section reads as follows:

"Monopolies and trusts shall never be allowed in this State, and no incorporated company, co-partnership, or association of persons in this state shall directly or indirectly combine or make any contract, with any incorporated company, foreign or domestic, through their stockholders or the trustees or assigns of such stockholders or with any co-partnership or association of persons, or, in any manner whatever, to fix the prices, limit the production, or regulate the transportation of any product or commodity. The Legislature shall enact laws for the enforcement of this Section by adequate penalties, and in the case of incorporated companies, if necessary for that purpose, may, as a penalty declare a forfeiture of their franchises."

It is argued that, since section 4 of the act authorizes the district to divest itself of all control of the operation and use of its properties and the charges which it shall make for district services, a monopoly may be thereby created. This section merely empowers the district to enter into a contract that an-

other may do the work for the district which it is already authorized to do for itself. We can see no monopoly of the kind prohibited by section 15, article 14, *supra,* in this. *Brown* v. *Electrical Dist. No. 2,* 26 Ariz. 181, 223 Pac. 1068; *Day* v. *Buckeye Water etc. Dist., supra.*

It is next claimed that section 5 of the act authorizes a voting trust and that this is contrary to public policy. It is true that it has frequently been held that voting trusts of various kinds are void as against public policy as specifically established, by statute or by implication therefrom. We know of no case, however, where, in the absence of a constitutional limitation, it has been held a voting trust specifically authorized by statute is illegal. Nor is the district prohibited from owning stock in a private corporation by section 7, article 9 of the Constitution, for, as we have held, this section does not apply to irrigation districts. *Day* v. *Buckeye Water etc. Dist., supra.*

Nor does the act violate section 1, article 9 of the Constitution, in that it authorizes the district to contract away its taxing power, for this section also does not apply to the district. *In re Auxiliary Eastern Canal Irr. Dist.,* 24 Ariz. 163, 207 Pac. 614; *Brown* v. *Electrical Dist. No. 2,* 26 Ariz. 181, 223 Pac. 1068.

It is next contended that the act authorizes the appropriation of private property to a private use without the consent of the owner. The position of defendant on this is not quite clear to us, but apparently it is that the taxes and assessments raised by the district may be used to pay for the operation of its storage and distributing plant by some private agency. The operation of the plant of the district is in aid of a public enterprise, no matter who actually does it, and paying for this work, when done by a private corporation, out of money raised by taxation

and assessment for district purposes is no more using private property for a private purpose than paying a zanjero or ditch cleaner from the same funds would be. Nor does the provision that nonresident property holders may not vote on bonds to be issued by the district result in the taking of property without due process of law. So long as the nonresident property owner is given his day in court before his property is finally included in the district, the due process clause of the Fourteenth Amendment to the federal Constitution is satisfied. *Fallbrook Irr. Dist.* v. *Bradley,* 164 U. S. 112, 17 Sup. Ct. 56, 41 L. Ed. 369; *Field* v. *Barber Asphalt Paving Co.,* 194 U. S. 618, 24 Sup. Ct. 784, 48 L. Ed. 1142.

The last question raised by defendant is as to the constitutionality of the proceeding set forth in section 10 of the act. The section provides that "after the execution of any contract or agreement contemplated by this Act" a suit may be brought in the superior court "to determine the validity of any bonds authorized by said contract or agreement," and sets forth in detail the method of procedure to be followed in such suit. This section is entirely separable from the balance of the act, and even if it be unconstitutional the remainder of the act constitutes a complete, harmonious and workable whole, and in such case the act as a whole is not unconstitutional. *Gherna* v. *State,* 16 Ariz. 344, 146 Pac. 494, Ann. Cas. 1916D 94; *Pinal County* v. *Lewis,* 22 Ariz. 128, 194 Pac. 1101. We therefore expressly refrain from passing on the constitutionality of section 10, *supra,* particularly as it refers to the testing of the validity of *bonds* whose issuance by the district may be in question, while in the present case the only bonds of the district involved were issued long before any of the contracts or agreements authorized by the act

were made, and their validity in no manner depends on such contracts or agreements.

We have examined, one by one, every constitutional objection to the act raised by defendant, and find that none of them, with the possible exception of the last one, is well taken, and that even if that one is good it does not affect the act as a whole or the duty of the defendant thereunder. Section 11 of the act makes it his duty to examine any contracts and agreements made by the district under the act, as well as any bonds to be issued by it thereunder. Of course we cannot, and do not attempt to, control his discretion in determining whether or not the various things required by the act to be done to give validity to the contracts have been done. Nor is his decision on these points conclusive on the courts. The legislature may very properly make it *prima facie* evidence of the facts; but even that body cannot make it conclusive, so as to deprive an interested party of the right to question such fact in a proper action. *Mobile, J. & K. C. R. Co.* v. *Turnipseed,* 219 U. S. 35, 31 Sup. Ct. 136, 55 L. Ed. 78, Ann. Cas. 1912A 463, 32 L. R. A. (N. S.) 226. Still less may it make his opinion on matters of law binding on any court. Such opinion is entitled to great respect, but unless it satisfies the sound judgment of the court it must be set aside.

But since the defendant admits that all the things necessary, as a matter of fact, to make the contracts in question comply with the terms of the act have been done, and since his only reason for refusing to certify the contracts as provided by the act is that the latter is unconstitutional for certain specified reasons, and since we have found none of the constitutional objections raised by him, and necessary for us to decide in order to determine his duty in the premises, relieves him of the duty imposed by section

11 of the act, the alternative writ heretofore issued is made peremptory.

: McALISTER and ROSS, JJ., concur.